Argued and submitted October 4, 2001, decision of Court of Appeals reversed in part and affirmed in part; judgment of circuit court affirmed February 14, 2002

DANIEL DAVID LICHAU,
*Petitioner on Review,*

*v.*

G.H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent on Review.*

(CV96-0127; CA A97504; SC S47776)

39 P3d 851

Steven H. Gorham, Salem, argued the cause and filed the brief for petitioner on review.

Kaye Ellen McDonald, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

BALMER, J.

## BALMER, J.

The issue in this post-conviction relief proceeding is whether petitioner received inadequate assistance of counsel at his criminal trial. The post-conviction court rejected all but one of petitioner's claims. Respecting that claim, which involved trial counsel's withdrawal of petitioner's alibi defense, the trial court concluded that counsel had performed inadequately and granted petitioner a new trial. The Court of Appeals reversed, concluding that counsel's assistance had been adequate under the circumstances. *Lichau v. Baldwin*, 166 Or App 411, 999 P2d 1207 (2000). For the reasons that follow, we now reverse the decision of the Court of Appeals and affirm the judgment of the post-conviction court.

## I. BACKGROUND

In February 1993, a grand jury indicted petitioner for the June 1989 rape, sodomy, and sexual abuse of his 11-year-old niece. The indictment alleged that, on two occasions, petitioner abused his niece while she and her seven-year-old sister were staying at the home of petitioner's parents in Lane County.

The niece first reported the abuse to authorities when she was 14, three years after it allegedly had occurred. She claimed that, on two consecutive nights, petitioner had abused her in a bedroom while her sister lay sleeping on the same bed. Because so much time had passed, however, she could not remember the precise dates of the abuse. She was able to recall, though, that on the first night of abuse, petitioner's parents had been awake watching television in the next room. She also believed that the abuse had occurred "two or three days" before she was admitted to the hospital, on June 19, 1989, for an unrelated leg infection. The niece recalled that petitioner had visited her at the hospital. The indictment accused petitioner of committing the abuse "on or between" June 1 and June 19, 1989.

Petitioner pleaded not guilty and was represented by lawyer McCrea. During June 1989, petitioner had been enlisted in the United States Marine Corps and stationed at Camp Lejeune in North Carolina. He told McCrea that, although he could not be sure, he did not believe that he had visited his parents that summer, but that his military records

would confirm whether he had taken leave. Petitioner's parents similarly were unable to recall whether he had been home at the time the niece said that the abuse had occurred. Accordingly, McCrea prepared an alibi defense and, in addition, a defense of implausibility. In other words, McCrea planned to contend that petitioner was not in Oregon in June 1989 and, even if he had been, that he could not have abused his niece as described without either waking up the younger sister or alerting petitioner's parents.

On the first day of trial, however, McCrea withdrew petitioner's alibi defense and proceeded with only the implausibility defense. McCrea later testified that he made that decision after meeting with the prosecutor earlier that morning. According to McCrea, the prosecutor had threatened to present testimony and introduce documents that she claimed would prove that, in June 1989, petitioner had been in Oregon on a special kind of leave called "basket leave" that does not appear on official military leave records. McCrea decided to withdraw petitioner's alibi defense until he had the chance to view the evidence the prosecutor claimed to possess. Despite McCrea's repeated requests, however, the prosecutor never gave him any evidence relating to "basket leave."

At trial, petitioner and his parents testified that they could not recall whether petitioner had been in Oregon in June 1989. With no alibi defense, however, the jury was not instructed that petitioner's presence in Oregon was a contested fact. To counter petitioner's remaining implausibility defense, the prosecution introduced the testimony of two of petitioner's sisters, who stated that he often had assaulted them sexually under similar circumstances when they were children. Petitioner's sisters further testified that their parents had been aware of the abuse but had refused to intervene. The jury convicted petitioner of all charges, the Court of Appeals affirmed, and this court denied review. *State v. Lichau*, 133 Or App 602, 891 P2d 25, *rev den* 321 Or 340 (1995).

## II. POST-CONVICTION PROCEEDING

Petitioner sought post-conviction relief, alleging, *inter alia*, that McCrea had provided constitutionally inadequate assistance of counsel by withdrawing petitioner's alibi

defense. Petitioner claimed that McCrea did not exercise reasonable skill and judgment because McCrea's decision to withdraw the alibi defense was not supported by a reasonable pretrial investigation of potential alibi witnesses or petitioner's military records. Petitioner contended that a reasonable investigation would have uncovered evidence demonstrating that, contrary to the prosecutor's assertions on the morning of trial, he had not visited Oregon in 1989 while on "basket leave." Alternatively, petitioner argued that, once the prosecution failed to divulge any evidence of his alleged "basket leave," McCrea's failure to reinstate the alibi defense had been unreasonable, resulting in constitutionally inadequate assistance of counsel. Finally, to show prejudice, petitioner asserted that, if McCrea had presented his alibi defense, that defense would have tended to affect the outcome of his trial because the jury would have heard additional evidence that he was not in Oregon when, according to his niece, the abuse allegedly had occurred.

At the post-conviction hearing, McCrea testified that he had not been familiar with military records or leave procedures and that, to investigate petitioner's alibi defense, he had sought assistance from petitioner's previous counsel, a military officer in New Mexico who had been assigned to represent petitioner when the allegations of abuse first arose. According to McCrea, that officer was "sympathetic to [petitioner's] situation and indicated that he was willing to try to help." During all the months that McCrea represented petitioner before trial, however, that officer produced no information. As a consequence, McCrea admitted that "all of the military records that I had received, I received as part of discovery from the prosecution." And, although the record is not entirely clear, it appears that those documents consisted solely of petitioner's 1989 Marine battalion movement record, which revealed only that his unit was not deployed overseas in June 1989; it did not disclose when or if petitioner had been on leave. Ultimately, McCrea subpoenaed petitioner's military records, but not until over a year after his trial. Thus, McCrea testified that, if he had not withdrawn the alibi defense, "[i]t would have been both the parents testifying and the defendant testifying, and I don't recall what was done, if anything, regarding records."

As noted, McCrea withdrew petitioner's alibi defense on the morning of trial when the prosecutor threatened to present evidence of unrecorded "basket leave." At the post-conviction hearing, McCrea explained that, in his opinion, if the prosecutor could have cast doubt on petitioner's alibi, it would have been the "kiss of death" for his client:

"In my experience with juries, it's not only [that] credibility is shot but that the jury resolves the case into just a 'was-he-or-wasn't-he-there' issue. * * * They forget all about the 'did-he-do-it.' They assume he did it if he was there."

McCrea offered no explanation why he had not reinstated the alibi defense once the prosecutor failed to turn over any evidence of "basket leave":

"Q. Did you ever seek with the Court leave to reinstate the alibi?

"A. No, I did not.

"Q. And do you remember why not?

"A. Well, I've tried to - I've tried to determine that myself, why not.

"Q. Did it make any difference to the defense case not to have the alibi[?]

"A. Well, it definitely did. * * *"

For his part, petitioner testified at the post-conviction hearing that, during preparations for trial, he had urged McCrea repeatedly to obtain his 1989 leave records, but that McCrea never did so. Those records, petitioner argued, demonstrated conclusively that he had not taken regular leave from Camp Lejeune in June 1989. Petitioner further testified that he had provided McCrea with names of supervisors who might have confirmed his presence at Camp Lejeune, but that McCrea never had contacted them. For example, petitioner introduced the affidavit of his platoon commander, Captain Tull, who confirmed that "basket leave" had not been available to members of his unit in 1989 as a general rule and that, at most, 96 hours of unrecorded special liberty could have been authorized. Tull further stated that, to the best of his knowledge, "[t]he vast majority of the unit, including [petitioner], remained in Camp Lejeune until July, 1989, at

which time they joined the advance party in Okinawa." Even if petitioner had secured a 96-hour liberty pass, Tull asserted that petitioner would not have been allowed to travel more than 350 to 500 miles away because traveling farther would have required special arrangements and a signed authorization from the commanding officer. Petitioner submitted affidavits of other persons from Camp Lejeune corroborating Tull's testimony.

Petitioner presented further evidence that, with minimal effort, McCrea could have subpoenaed other military records, including petitioner's Marine unit diary, that would have supported his alibi defense. According to petitioner, McCrea had declined an offer from a Marine, Sergeant Glenz, to assist in obtaining those military records. The unit diary was in evidence at the post-conviction hearing and contained an entry demonstrating that petitioner had qualified on the rifle range at Camp Lejeune on June 28, 1989. According to testimony, petitioner would have started qualifying on the range on June 26 and, before that date, would have participated in preparatory training, called a "snap-in," that could have commenced as early as June 19. Petitioner therefore argued that McCrea could have used the unit diary to demonstrate that the state had failed to prove beyond a reasonable doubt that petitioner had been in Oregon in early or mid-June 1989.

Petitioner also argued that a reasonable investigation by McCrea would have revealed other witnesses and evidence supporting his alibi defense. First, petitioner's brother testified that he had visited his parents' home regularly on the weekends during June 1989 and that petitioner was not present. A neighbor, Thompson, provided similar testimony. Both claimed that they had been available to testify at petitioner's trial, but that McCrea had not called them. Second, petitioner presented evidence of bank statements which demonstrated that he had not withdrawn more than $300 in June 1989, suggesting that he could not have purchased a plane ticket to fly from Camp Lejeune to Oregon during that time. Finally, petitioner presented testimony that various items that had since been destroyed, including telephone records, checking account information, and postmarked letters to his fiancée, would have been available at trial to prove

that he had not been in Oregon in June 1989, but that McCrea had not sought those items.

In light of the foregoing, the post-conviction court agreed with petitioner that

"[McCrea's] failure to investigate and use the evidence and witnesses available to him regarding Petitioner's alibi, as well as his withdrawal of and subsequent failure to move to reinstate his alibi defense when the state's promised evidence was not forthcoming, was a failure to exercise reasonable professional skill and judgment."

The post-conviction court found that, if McCrea had performed an adequate investigation and had not withdrawn the alibi defense, the jury could have heard the following testimony:

"1)   Petitioner was not at his parents' home in June of 1989.

"2)   Petitioner had no recorded leave from the Marine Corps at the time of the alleged crimes.

"3)   There was no basket (unrecorded) leave available to him.

"4)   The longest unrecorded period away from base during the time of the alleged crimes was for a 96-hour liberty.

"5)   Petitioner could not have traveled f[a]rther than 300-500 miles during said liberty without the express written permission of his commanding officer. Such an extension required special arrangements and would have been difficult to arrange with the short advance warning given for 96 hour liberties.

"6)   According to the unit records, Petitioner would have been involved in a 'snap in' to qualify for rifle training in North Carolina on June 19, 1989, the day the victim testified he visited her in the hospital in Oregon following the alleged crimes."

The court concluded that the absence of the above evidence "clearly ha[d] a tendency to affect the result of the prosecution of the case" and granted petitioner post-conviction relief.

The state appealed, assigning error to the post-conviction court's conclusions. As noted, the Court of Appeals reversed, concluding that petitioner had failed to prove that McCrea's pretrial investigation of petitioner's alibi defense had been unreasonable under the circumstances. The court's decision focused on the fact that neither petitioner nor his parents could testify with certainty whether petitioner was in Oregon in June 1989. In the court's view, "[t]hat uncertainty made the viability of an alibi defense questionable from the inception." *Lichau*, 166 Or App at 418. Because the military lawyer that McCrea had contacted did not produce any further evidence, and because nothing in the record supported a finding that McCrea "should have suspected that the military [lawyer's] search for records had been inadequate," *id.* at 419, the court concluded that McCrea had acted reasonably in presuming that "a further search would be fruitless," *id.* at 420. The court also noted that Sergeant Glenz did not offer to help McCrea obtain petitioner's records until after the trial had started. Accordingly, the court concluded that, "under the totality of the circumstances, [McCrea] had conducted a reasonable pretrial investigation." *Id.* at 419.

In light of its conclusion that McCrea had conducted a reasonable investigation, the Court of Appeals also concluded that McCrea's decision to withdraw the alibi, and thereafter not to reinstate it, was reasonable under the circumstances. Specifically, the court noted that McCrea's investigation had revealed no conclusive proof that petitioner had not been in Oregon in June 1989. Therefore, because the prosecutor had threatened to introduce evidence of "basket leave," the court concluded that McCrea was reasonable in opting to avoid "the risk that the [alibi] defense would not be strong enough to convince the jury." *Id.* at 420. This court allowed petitioner's petition for review.

## III. DISCUSSION

■■ Post-conviction relief is warranted when there has been a "substantial denial" of "rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." ORS 138.530(1)(a). We begin by considering whether petitioner was denied his right to adequate counsel under

Article I, section 11, of the Oregon Constitution.[1] *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (setting out methodology). To prevail, petitioner must demonstrate, by a preponderance of the evidence, that McCrea failed to exercise reasonable professional skill and judgment, and that petitioner suffered prejudice as a result. *See* ORS 138.620(2) (establishing burden of proof); *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995) (identifying standard for inadequate assistance). However, "[n]ot all lapses of professional skill and judgment entitle a defendant to post-conviction relief. Instead, only those acts or omissions by counsel which have a *tendency to affect the result* of the prosecution can be regarded as of constitutional magnitude." *Stevens*, 322 Or at 110 (citing *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991)) (internal quotations omitted; emphasis in original).

■■ In this case, therefore, we engage in a two-pronged inquiry. *See Gorham v. Thompson*, 332 Or 560, 564, 34 P3d 161 (2001) (explaining methodology). First, we must determine whether petitioner demonstrated by a preponderance of the evidence that McCrea failed to exercise reasonable professional skill and judgment. *Id.* Second, if we conclude that petitioner met that burden, we further must determine whether he proved that counsel's failure had a tendency to affect the result of his trial. *Id.* In reviewing the decision of the post-conviction court, we are bound by its findings of historic facts that are supported by evidence in the record. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (so stating). Additionally, "[i]f findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the [post-conviction court's] ultimate conclusion * * *." *Id.*

A. *Reasonable Professional Skill and Judgment*

■■ On review, petitioner first contends that McCrea's decision to withdraw the alibi defense was not an exercise of reasonable professional skill and judgment because it was

---

[1] Article I, section 11, of the Oregon Constitution, provides that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

not supported by an investigation of potential alibi witnesses and military records that was reasonable under the circumstances. We note at the outset, as did the Court of Appeals, that a lawyer's decision to withdraw a certain defense is, in the abstract, a tactical one, deserving of considerable deference. *See Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981) ("[I]f counsel exercises reasonable professional skill and judgment, a reviewing court will not second-guess the lawyer in the name of the constitution * * *."). Indeed, a court reviewing a claim of inadequate assistance of counsel must make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight. *See id.* ("The constitution gives no defendant the right to a perfect defense—seldom does a lawyer walk away from a trial without thinking of something that might have been done differently or that he would have preferred to have avoided.").

■  However, this court repeatedly has cautioned that, to be considered an exercise of professional skill and judgment, a lawyer's tactical decision "must be grounded on a reasonable investigation." *Gorham*, 332 Or at 567; *see also Krummacher*, 290 Or at 875 ("[C]ounsel must investigate the facts and prepare himself on the law to the extent appropriate to the nature and complexity of the case * * *."). More specifically, this court has stated that tactical decisions made in the course of preparing for trial must involve

> "a conscious choice by a lawyer either to take or to omit some action on the basis of an evaluation of the nature and complexity of the case, the likely costs and potential benefits of the contemplated action, and other factors."

*Stevens*, 322 Or at 109. Accordingly, each decision to limit investigation of a particular defense itself must be a reasonable exercise of professional skill and judgment under the circumstances.

In this case, the record discloses that McCrea limited his investigation of documentary alibi evidence to seeking assistance from petitioner's former military lawyer, who ultimately gave none, and to reviewing material provided by the prosecution, which consisted solely of a battalion movement record that did not disclose when or if petitioner had been on

leave. McCrea did not seek any additional military documents, such as petitioner's personal leave record. Neither did he attempt to contact possible alibi witnesses, aside from petitioner's parents. As noted, the Court of Appeals concluded that the foregoing limited investigation was reasonable, given petitioner's own uncertainty of his whereabouts and because, in the court's view, it was not unreasonable for McCrea to presume that petitioner's prior military lawyer had conducted an unsuccessful investigation for records and that "a further search would be fruitless." *Lichau*, 166 Or App at 420. We disagree on both counts.

Despite petitioner's uncertainty of his whereabouts in 1989, McCrea knew that, in June of that year, petitioner had been enlisted in the United States Marine Corps, a highly regulated environment, and had been stationed at Camp Lejeune, thousands of miles from the scene of the alleged abuse. Petitioner repeatedly had told McCrea both that military records demonstrating that he had not taken leave in June 1989 were available and that supervisors might be able to confirm that he was at Camp Lejeune during that time. In our view, such information should have prompted McCrea to investigate further.

In that regard, this case is comparable to *Stevens*, where the defense counsel chose not to interview any potential witnesses at the school where the complaining witness had spent the morning after the defendant allegedly had raped her. Under those circumstances, this court held that the trial counsel's decision "was not a choice that was based on a reasonable evaluation of the likely costs and potential benefits of pursuing the investigation." *Stevens*, 322 Or at 109. Here, McCrea himself knew enough to suspect that "the military would keep records that would demonstrate where a person was, especially things like roll call or duty rosters and those kinds of things * * *." Yet he chose not to investigate potential witnesses at Camp Lejeune or to subpoena records from the military until over a year after the criminal trial. We conclude that choosing to limit his investigation in that way was not "based on a reasonable evaluation of the likely costs and potential benefits" to petitioner. *Id.*

■     Next, we disagree that McCrea nevertheless was entitled to rely on the lack of information that he had received from petitioner's prior military lawyer as evidence that further investigation was unnecessary. The evidence in the record, far from establishing that McCrea had found a sympathetic colleague who "was unable to locate any additional records that would corroborate petitioner's alibi," *Lichau*, 166 Or App at 419, discloses nothing about the extent of that officer's efforts. Indeed, the post-conviction court found only that

> "[McCrea] couldn't remember the officer's name or any information that he actually received from this individual."

In other words, the record does not indicate that that officer had represented to McCrea that he had conducted any investigation of petitioner's military records. However, the record does indicate that petitioner was able to present the post-conviction court with what the state concedes is "a substantial amount" of documentary and testimonial evidence in support of his alibi defense that McCrea did not uncover. Given those circumstances, we agree with the post-conviction court's finding that McCrea's reliance on petitioner's former military lawyer did not excuse McCrea from further investigating petitioner's alibi defense.

■     We return, then, to McCrea's decision to withdraw petitioner's alibi defense on the morning of trial. As noted, that decision was based on McCrea's belief that the alibi defense might have been compromised by the prosecutor's claimed evidence of "basket leave." Because of his unreasonably limited pretrial investigation, however, McCrea lacked the information necessary to evaluate properly the prosecutor's threat. In other words, McCrea was not "equipped to advise his client, exercise professional judgment and represent [petitioner] in an informed manner." *Krummacher*, 290 Or at 875. We therefore conclude that the record supports the post-conviction court's finding that McCrea's decision to withdraw petitioner's alibi defense was not a reasonable exercise of professional skill and judgment.[2]

---

[2] Because we conclude that McCrea's initial withdrawal of petitioner's alibi defense was unreasonable under the circumstances, we need not address

## B. *Prejudice*

Having concluded that McCrea failed to exercise reasonable professional skill and judgment in the course of representing petitioner, we now must decide whether that failure prejudiced petitioner. *Gorham*, 332 Or at 564. As noted, "only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude[.]" *Krummacher*, 290 Or at 883.

The Court of Appeals concluded that petitioner had received adequate assistance of counsel and, therefore, that it did not have to address the question of prejudice. Nevertheless, the court determined that the evidence that petitioner presented at the post-conviction hearing "yield[ed] the portrait of a somewhat more viable, but still not 'airtight,' alibi defense." *Lichau*, 166 Or App at 422. Thus, the Court of Appeals suggested that, even if McCrea's investigation had been inadequate, petitioner would not have been prejudiced because "there is no reason to conclude that a more thorough investigation would have dictated that [McCrea] pursue the alibi defense * * *." *Id.* We disagree.

Whether McCrea would have proceeded with the alibi defense had he been aware of the evidence presented at the post-conviction hearing is a question of fact. As such, we are bound by the post-conviction court's finding that McCrea would have done so, if that finding is supported by evidence in the record. *Ball*, 250 Or at 487. Here, the record discloses that, when shown petitioner's unit diary at his post-conviction deposition, McCrea admitted that, "if I had had it, and I don't recall ever having seen this before, *I would not have withdrawn the alibi defense.* And secondly, would I have presented it to the jury? Absolutely." (Emphasis added.) Accordingly, contrary to the Court of Appeals's suggestion, the prejudice inquiry in this case must proceed from the premise that the jury would have heard the alibi evidence that petitioner presented at the post-conviction hearing. The

petitioner's alternative claim that McCrea had acted unreasonably in failing to reinstate the alibi defense once he realized that the state's evidence of "basket leave" was not forthcoming.

question, then, is whether that evidence would have had a tendency to affect the result.

In that regard, the state argues that none of the alibi evidence that petitioner produced at the post-conviction proceeding "conclusively" establishes that petitioner was at Camp Lejeune at the time the alleged abuse occurred and that, even if petitioner's evidence had been introduced at trial, it would not have had a tendency to affect the result because the state could have presented other evidence to counter it. The state appears to concede that petitioner was not on regular leave in June 1989 and that United States Marine Corps regulations would not have permitted him to take more than 96 hours of undocumented leave. The state argues, however, that 96-hour leave almost certainly was available to petitioner and that 96 hours was enough time for him to have traveled to Oregon where he could have committed the alleged abuse. The state further suggests that, hypothetically, petitioner could have taken in excess of 96 hours of leave "had he been disposed to break [the] rules." The state similarly attacks all petitioner's other evidence, including his Marine unit diary, as failing to establish conclusively that petitioner did not take an undocumented 96-hour leave in June 1989. That petitioner's evidence fails to prove anything with certainty, according to the state, is fatal to his claim that the absence of that evidence prejudiced his case. We are not persuaded by the state's position.

This court never has held that evidence presented at a post-conviction hearing—evidence that could have been presented at petitioner's criminal trial—must be "conclusive" to be deemed to have a tendency to affect the result of a trial. This case primarily turned on the credibility of the niece and petitioner. The niece had suggested that petitioner was home long enough to visit her in the hospital on June 19, 1989, "two or three days" after he had abused her over the course of two consecutive nights. At his trial, petitioner testified only that he did not believe that he had been home then, but that he could not be absolutely sure. With the alibi defense, however, petitioner could have presented credible evidence that, if accepted, would have demonstrated that, the week before June 19, 1989, he was not on official leave from military duty; unofficial "basket leave" probably was not available to him;

at most, he might have had 96 hours within which to make an unauthorized trip from North Carolina to Oregon and back; and he was not seen at home in Oregon. In our view, the presentation of that evidence could have tended to affect the jury's consideration of the niece's and petitioner's version of events.

Moreover, if McCrea had not withdrawn the alibi defense, petitioner could have requested that the court instruct the jury that the state had the burden of proving, beyond a reasonable doubt, that petitioner was present in Oregon during the narrow period of "on or between" June 1 and June 19, 1989. Instead, McCrea testified that the court specifically had instructed the jury "that there was not an issue as to whether or not [petitioner] was there." In light of the foregoing, we cannot say that petitioner's alibi defense would not have had "a tendency to affect the result of the prosecution * * *." *Krummacher*, 290 Or at 883. We agree with the post-conviction court that petitioner was prejudiced by trial counsel's unreasonable failure to investigate petitioner's alibi defense.

Petitioner was denied adequate assistance of counsel in violation of Article I, section 11, of the Oregon Constitution.[3] He therefore is entitled to post-conviction relief as provided in ORS 138.520.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is affirmed.

---

[3] Because we decide this case under Article I, section 11, of the Oregon Constitution, we need not consider petitioner's arguments under the Sixth Amendment to the United States Constitution.

In addition, because we conclude that petitioner is entitled to a new trial as a result of his lawyer's constitutionally inadequate assistance, we need not address petitioner's cross-assignment of error with regard to the post-conviction court's dismissal of his remaining claims of trial court error, prosecutorial misconduct, and other issues. In any event, petitioner did not properly develop or present those claims in his briefs in this court or in the Court of Appeals.