Submitted July 2, 2014; reversed and remanded with instructions to grant relief as to the first- and second-degree encouraging child sexual abuse counts, otherwise affirmed December 29, 2016

THEODORE WALLACE DENTON,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
12049361P; A154587

388 P3d 341

James N. Varner filed the brief for appellant. Theodore Wallace Denton filed a supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

**DUNCAN, P.J.**

Petitioner appeals a judgment of the post-conviction court, assigning error to the court's determination that, although petitioner's trial counsel provided inadequate and ineffective assistance under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, petitioner was not prejudiced by it. The post-conviction court determined that trial counsel performed inadequately by failing to properly notify the state of witnesses who would have testified that petitioner was not at his home on two days when child pornography was downloaded onto his computer. We conclude that that failure and its result—that the alibi witnesses did not testify—prejudiced petitioner. Accordingly, we reverse and remand for the post-conviction court to grant relief.

We state the facts consistently with the post-conviction court's express and implicit factual findings. *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). In a single indictment, petitioner was charged with six counts relating to a theft and the crimes relevant to this appeal: four counts of first-degree encouraging child sexual abuse (ECSA), ORS 163.684, and six counts of second-degree encouraging child sexual abuse, ORS 163.686.[1] After trial counsel successfully moved to sever the theft-related counts

[1] ORS 163.684(1) provides:

"A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells a visual recording of sexually explicit conduct involving a child * * * ; [and]

"* * * * *

"(b) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

ORS 163.686(1) provides, in part:

"A person commits the crime of encouraging child sexual abuse in the second degree if the person:

"(a)(A)(i) Knowingly possesses or controls, or knowingly accesses with the intent to view, a visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person; [and]

"* * * * *

from the ECSA counts, the state chose to try the ECSA counts first.[2]

The evidence presented at trial showed that, while officers were executing an unrelated search warrant at the house where petitioner lived with his wife and three step-sons, they discovered four printed photographs of what appeared to be underage girls in pornographic poses. The photographs were printed on ordinary printer paper, and they were inside a drawer in a locked shed in the backyard of the house. Petitioner had a key to the shed on his key ring.

In light of that discovery, petitioner consented to the seizure of all the computers in the house: three laptop computers and one desktop computer. One of the laptops was found on the bed in the master bedroom; that laptop contained additional child pornography. None of the other computers contained child pornography.

The two main user profiles on the laptop found in the master bedroom were "Theodore," which is petitioner's first name, and "Grace," which is petitioner's wife's first name. There was no pornography in the "Grace" profile. In the "Theodore" profile, investigators discovered multiple pornographic images of children, including digital versions of three of the printed photographs discovered in the shed.[3] The files were all saved in a folder related to Limewire, a peer-to-peer file-sharing application, and had names suggesting that they contained child pornography.[4] The officer who examined the computers testified that the files

---

"(B) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse[.]"

[2] In a *pro se* supplemental brief on appeal, petitioner asserts additional assignments of error based on the post-conviction proceedings regarding his convictions on the theft-related counts. We reject those assignments without discussion.

[3] The images found on the laptop computer included six images that were the basis of the six counts of second-degree ECSA, as well as three images that were the same as three of the four printed images, and 10 to 15 additional images of what appeared to be children engaged in sexual activity.

[4] For example, one of the files was named "LKD-016-110-Lolitas Young 12 YR Old Virgins Little Child Preteens Underaged Pussies LS-ModelsBD-Company. jpg." The officer who examined the computers testified that he found no evidence that the file names had been changed after the files were downloaded.

were downloaded on October 21, 2009, at 10:52 a.m., and January 6, 2010, between 12:06 p.m. and 12:52 p.m.[5] The state did not present any direct evidence of where the files were downloaded, but it proceeded on the understanding that the downloads took place at the house, through the house's internet connection and wireless network.

The state tried the case on the theory that petitioner, and no one else, had downloaded and printed the child pornography. In support of that view, it presented evidence that the laptop containing the child pornography had been found on the bed in the bedroom that belonged to petitioner and his wife and that the files were found within the "Theodore" profile, which belonged to petitioner and was password protected. The password had most recently been changed on November 28, 2009, and the state's evidence suggested that it was "open sesame."

The state also presented evidence that petitioner's fingerprint had been found on the corner of the paper containing one of the photographs and that other fingerprints, including one that could not be ruled out as petitioner's, had been found on two of the other photographs. On cross-examination, the state's forensic scientist testified that fingerprints can be absorbed into paper, and that, if that had happened, the paper could have gone through a printer without disturbing the fingerprint.

Petitioner tried to counter the state's theory that he was the one who had downloaded and printed the child pornography by showing that other people had access to the shed where the photographs were found and to the "Theodore" profile on the laptop. The defense presented testimony from petitioner's 15-year-old stepson and petitioner's friend Brian King that there was a second key to the shed hidden near the door to the shed and that they and other people knew of, and used, the key. Petitioner's wife testified that, although she did not know of the hidden key, she had found various people sleeping in the shed. King also testified that, between

---

[5] The indictment alleged that the ECSA counts were committed between October 1, 2009 and February 14, 2010, but, as explained further below, the state's only theory at trial was that the images were downloaded on October 21 and January 6 and printed on or after January 6.

October 2009 and January 2010, he had property stored in the shed.

Petitioner also presented evidence that others had access to the laptop generally and the "Theodore" profile in particular. Petitioner's wife testified that she used the laptop in the living room or the master bedroom and that she would sometimes take it out of the house with her to attend classes. All four of petitioner's witnesses testified that, in late 2009 and early 2010, several people were frequent visitors to the house and used computers there. Petitioner's stepson explained that, at the house, "anybody that wanted to use [a] computer could use it." He provided the names of four people who had done so, including King. He also testified that he, and the visitors, used computers when petitioner was not home, "selling stuff and putting stuff on the Internet."

Both petitioner's stepson and King also testified that they had used the "Theodore" profile on the laptop. Petitioner's stepson testified that he used Limewire to download music. (On cross-examination, the state elicited petitioner's stepson's testimony that his school attendance records showed that he had been at school on October 21, 2009, and January 6, 2010, when the files were downloaded.) King testified that he had stayed at the house from before October 2009 to early January 2010, and that he had frequently used the "Theodore" profile during that time. He testified that he had used the profile to look at pornography, including when petitioner was not home, although he had not downloaded any. He denied looking at any child pornography, but, when asked if he was sure, said that, "you get on the Internet and I would say that nothing is 100 percent certain." Petitioner's stepson, King, and petitioner's wife all testified that they knew the password to the "Theodore" account at various times, but none of them identified the password as "open sesame."

As mentioned, the indictment alleged four counts of first-degree ECSA and six counts of second-degree ECSA. In closing argument, the prosecutor explained the difference between the first- and second-degree ECSA charges: "[T]he first degree counts were [for images that were] printed out

and the second degree ones were [for] images on the computer." The prosecutor tried to cast doubt on petitioner's evidence, asserting that petitioner, and not the other people he had identified, had downloaded and printed the images. She emphasized that, of the images found on the "Theodore" profile, "three of those images were the same as the ones that were printed out. Huh, how does that happen, you wonder?"

The prosecutor pointed out that none of petitioner's witnesses "were able to testify that they were at [petitioner]'s house on October 21st when the first download happened or January 6th." Then she noted testimony of one of the defense witnesses that petitioner "was in and out of the house" around those dates. She argued, "Yeah, he was in and out of the house. He was there. He downloaded those images. He printed those images. He put them in the shed."

In response to the defense argument that someone else could have downloaded and printed the images, the prosecutor again emphasized that the crimes took place on October 21 and January 6:

"[T]he story you would have to believe is that someone came to his house and he wasn't there. And *** broke in, went to his computer, somehow was able to load and log in [with] his password. Then went and downloaded child pornography—did searches, downloaded it, saved it and then printed it out.

"And then broke into his shed, which was also locked and then decided to store those images in his shed. Now who *** would do that? And it wouldn't happen just on one occasion. It would have happened twice because remember we had the October 21st date and we have the January 6th date.

"So on two occasions [petitioner] is asking you to believe that someone would have broken into his house, gone there, got on his computer, somehow knew his password and downloaded porn, saved it. It didn't happen, ladies and gentlemen. [Petitioner] did that."

The jury convicted petitioner on all 10 counts.

Petitioner sought post-conviction relief, asserting, among other things, that his trial counsel had performed inadequately under Article I, section 11, and the Sixth Amendment by failing to file a notice of alibi defense, which prevented him from presenting testimony from two witnesses that, petitioner asserted, would have established that petitioner was not at home at the two times when the child pornography was downloaded. In support of that allegation, petitioner offered, and the post-conviction court admitted, affidavits from two witnesses, Carskadon and Gianukos.

Carskadon, petitioner's father-in-law, stated that on October 21, 2009, he spent the day with petitioner, from before 9:00 a.m. to 3:00 p.m. or 3:30 p.m. He remembered the date in particular because it was petitioner's birthday. He took petitioner out to breakfast at a restaurant where he would get a free meal on his birthday, and then petitioner helped Carskadon clean out his garage. Carskadon stated that he was in court on the day of trial and expected to be called as a witness, but he was not.

In her affidavit, Gianukos stated her recollection that she had employed petitioner to remodel her house during the first week of January, 2010 (among other times), and that he had worked all day at least two days that week. The affidavit also incorporated a statement that she had made to an investigator employed by petitioner's trial counsel, which stated, as relevant here, that, on January 6, 2010, petitioner "showed up with a new friend 'Mike' to work on her house. The boys left around the usual time of 2 to 3 p.m." The affidavit indicates that the ordinary time for petitioner to start work for Gianukos was between 9:00 a.m. and 10:00 a.m. Gianukos's affidavit also states that she was available and prepared to testify on the day of petitioner's trial.

In addition to providing those affidavits, petitioner pointed out that, in trial counsel's opening statement in the criminal trial, he had informed the jury that it would be hearing testimony from Carskadon and Gianukos to the effect that petitioner was not home on the days in question. However, counsel did not present that testimony. At the post-conviction trial, petitioner testified that counsel had informed him that that was based on an in-chambers ruling

that counsel had failed to provide the required notice of alibi defense.

In response to petitioner's evidence, the state did not deny that trial counsel had performed inadequately and did not dispute that, if they had been called, the alibi witnesses would have testified that petitioner was with his father-in-law on October 21 and working at Gianukos's house on January 6 at the times when the files were downloaded. Instead, it argued that the jury would have convicted petitioner regardless of the alibi testimony because of the evidence that petitioner's computer, and his password-protected profile, were used to download the files. Accordingly, the state contended, petitioner was not prejudiced by trial counsel's failure to present testimony that petitioner was elsewhere when the files were downloaded.

The post-conviction court agreed. It ruled that "there was sufficient other evidence" against petitioner that he was not prejudiced by the trial counsel's failure to present the alibi evidence. Accordingly, the court denied relief.

Petitioner appeals, assigning error to the post-conviction court's denial of post-conviction relief. He contends that he was prejudiced by trial counsel's failure to present testimony that he was not at home when the files were downloaded. As explained below, we agree.

A criminal defendant is entitled to adequate assistance of trial counsel under Article I, section 11, and the Sixth Amendment.[6] *See Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015); *see also* ORS 138.530(1)(a) (post-conviction relief warranted for "substantial denial" of a petitioner's constitutional rights "which denial rendered the conviction void"). Courts evaluate a claim of inadequate assistance using two steps:

> "'First, we must determine whether petitioner demonstrated by a preponderance of the evidence that [his lawyer] failed to exercise reasonable professional skill and

---

[6] Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

judgment. Second, if we conclude that petitioner met that burden, we further must determine whether he proved that counsel's failure had a tendency to affect the result of his trial.'"

*Montez*, 355 Or at 7 (quoting *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002) (brackets in *Montez*)).

Here, as explained above, the post-conviction court determined that petitioner's trial counsel performed inadequately—he failed to exercise reasonable professional skill and judgment—when he failed to give the state notice of his intent to present alibi witnesses and, consequently, failed to present their testimony that petitioner was elsewhere when the files were downloaded. The state does not dispute that determination. Accordingly, the only question on appeal is whether counsel's failure to give the alibi notice, and consequent failure to present the alibi testimony, had a tendency to affect the result of petitioner's criminal trial.

The Oregon Supreme Court recently clarified the standard for determining whether inadequate assistance of counsel has a tendency to affect the result of a trial. In *Green*, 357 Or at 322-23, the court explained:

"[W]here the effect of inadequate assistance of counsel on the outcome of a jury trial is at issue, it is inappropriate to use a 'probability' standard for assessing prejudice. Instead, because many different factors can affect the outcome of a jury trial, in that setting, the tendency to affect the outcome standard demands more than mere possibility, but less than probability. As the court stated in *Lichau*, the issue is whether trial counsel's acts or omissions '*could have tended to affect*' the outcome of the case. [333 Or at 365] (emphasis added)."[7]

Thus, the question for us is whether, on the record in this case, the testimony of Carskadon and Gianukos indicating that petitioner was not home when, according to the state, the child pornography was downloaded "'could have tended to affect' the outcome of the case." *Green*, 357 Or at 323. As noted above, at the post-conviction trial, the state's

[7] Petitioner raises both state and federal claims. Because we conclude that petitioner established prejudice under the Article I, section 11, standard, we need not, and do not, address his federal claim.

position was that petitioner was not prejudiced by trial counsel's failure to present his alibi evidence, which would have supported his claim that he did not download the pornography, because the state presented evidence from which the jury could find that petitioner had downloaded it.

That argument ignores the analytical question. Where trial counsel has performed inadequately by failing to present potentially exculpatory evidence, we must ask how the missing evidence could have affected the jury's perception of the evidence in the case. *See, e.g., Lichau,* 333 Or at 364 (trial counsel's failure to present alibi evidence was prejudicial where the evidence "could have tended to affect the jury's consideration of" the parties' competing versions of events). The question is not, as the state seemed to have asserted, whether the state in fact presented evidence sufficient to allow the jury to find the petitioner guilty.

In this case, to be sure, the state presented evidence from which the jury could find that petitioner, using his password-protected profile, downloaded the images on October 21 and January 6 and printed them. The fact that none of petitioner's witnesses testified to the password that may have been needed to use petitioner's profile on January 6 strengthened the inference that petitioner, and no one else, downloaded and printed the images.

If counsel had presented the alibi evidence, however, the jury would also have heard evidence that, at the times when the images were downloaded, petitioner was not at home, the location where the state asserted that the images were downloaded and printed. That additional evidence directly undercuts the inference that the state sought to have the jury make, namely, that petitioner, and no one else, downloaded and printed the images. Moreover, it considerably strengthens the inference that the defense sought to have the jury make, specifically, that someone other than petitioner had used petitioner's profile to download and print the images when he was not home. Accordingly, it could have tended to affect the result of the trial.

On appeal, the state now theorizes that the alibi evidence might not have made a difference in petitioner's trial because the jury likely convicted petitioner on theories

of the case that were not argued to the jury. In the state's present view, the jury "almost certainly based its verdict" on the theory that, "regardless who downloaded the digital images, petitioner knowingly printed and possessed them after they were downloaded."

With respect to the printed photographs, on which the first-degree ECSA counts were based, the state points out that the prosecutor asked the jury to conclude that petitioner had printed the photographs, and it contends that evidence about who downloaded the photographs was irrelevant to that finding. That argument cannot be squared with the state's theory of the case as it was presented to the jury. The state's argument in favor of conviction on the four first-degree ECSA charges—for printing the photographs—was inextricably linked to its argument that petitioner had downloaded all of the images. The prosecutor argued that petitioner was the person who both downloaded and printed the child pornography. She pointed out that, although petitioner's witnesses testified that others were at the house around October 21 and January 6, none of them could say for certain that anyone else was there on those specific days. She asserted, "[Petitioner] was there. He downloaded those images. He printed those images. He put them in the shed." Thus, the state's case rested on the proposition that none of the people petitioner had identified as potential consumers of child pornography had downloaded or printed the images; petitioner alone committed all the charged crimes. As explained above, the alibi evidence belied that theory. Accordingly, the alibi evidence could have tended to affect the jury's consideration of the evidence that petitioner printed the photographs.

As to the second-degree ECSA charges, the state now argues that "the jury likely convicted based on a finding that petitioner had *possessed* the pictures by knowingly maintaining them on his computer *after* they were downloaded." (Emphasis in state's brief.) We disagree. As we have explained, all of the questioning and argument by both parties at the criminal trial framed the question as whether petitioner, and only petitioner, downloaded and printed all of the images. Thus, the record does not support the state's suggestion that the jury likely convicted on the theory that

someone else downloaded the images and then petitioner learned of them and nevertheless continued to possess them. The missing alibi evidence could have tended to affect the jury's consideration of whether petitioner possessed the images by downloading them, as the state argued that he had.

Reversed and remanded with instructions to grant relief as to the first- and second-degree encouraging child sexual abuse counts; otherwise affirmed.