Argued and submitted August 19, 2003, affirmed November 24, 2004, petition for review denied March 8, 2005 (338 Or 301)

BOYD EDWARD HALL,
*Appellant,*

*v.*

Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

01-07-1233-M; A118503

100 P3d 1138

Patrick M. Ebbet argued the cause for appellant. On the brief were Andrew S. Chilton and Chilton & Ebbett, LLC.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

Petitioner was indicted in 1997 on nine charges of sexual offenses committed against his daughter and granddaughter. After his conviction on all charges, he sought post-conviction relief, claiming that his counsel was constitutionally inadequate for failing to move to dismiss four of the charges on grounds that they were barred by a six-year statute of limitations, pursuant to ORS 131.125(2). In particular, petitioner asserted that statements made to police in 1987 constituted a report of the four offenses of rape and sodomy involving his daughter, thus requiring those charges to be brought within six years of the report. The post-conviction court denied the petition, reasoning that the offenses were not reported to police within the meaning of ORS 131.125(2). As we explain below, we affirm the denial of post-conviction relief, although we do so under an alternative rationale.

The essential facts are those provided by an incident report, and a supplement to that report, prepared by police in 1987. On June 19, 1987, Carol Johnson contacted police to report that her neighbor, petitioner, had sexually abused her daughter, Robyn. An officer went to Johnson's apartment to investigate that allegation, and he talked with Robyn with her mother (Johnson) present. Robyn described how petitioner had sexually touched her and another girlfriend, Davis, while the two were staying overnight with petitioner's youngest daughter, Lori. The officer also questioned Davis, who repeated to the officer something that Lori had told her. Specifically, Davis said that, according to Lori, petitioner was "doing it" to his oldest daughter, Rebecca. The officer understood "doing it" to mean sexual intercourse. In response to Davis's disclosure, the officer told Robyn "to go get Lori," who was playing outside. Once inside Johnson's apartment, Lori was interviewed by the officer. Johnson was present, but Lori, who was about 11 years old at the time, was not accompanied by any family member. By the officer's own description, Lori was "terrified," "very afraid to say anything," and was "crying" at times. But she ultimately answered the officer's questions about petitioner's sexual contacts.

In particular, Lori denied to the officer that petitioner had ever had "sexual intercomm" with her—terminology that the officer took to mean sexual intercourse—but she said that she "was sure" that petitioner had engaged in sexual intercourse with Rebecca. Lori then described for the officer what she actually witnessed in terms of petitioner's sexual contact with Rebecca. Lori explained that she and Rebecca slept together in a large bed. Petitioner would come into the girls' room around 1:00 or 2:00 a.m. and, when he did, Lori would pretend to be asleep. If Rebecca was awake, petitioner would tell Rebecca to remove her clothes. If Rebecca was asleep, petitioner would remove Rebecca's clothes, and Lori could "hear and feel" Rebecca struggling. Sometimes, Rebecca would hit petitioner to try to make him stop. Petitioner would stay 10 or 20 minutes and then leave. Lori kept her eyes closed and could not see "what exactly [petitioner] was doing to" Rebecca. Nor did Rebecca ever tell Lori what petitioner had done to her. Lori expressed to the officer, however, that she was sure that petitioner was having intercourse with Rebecca. Lori also described ways in which petitioner had touched her sexually, but she told the officer that petitioner had not ever had sexual intercourse with her.

During Lori's interview, the officer asked her directly "how long ago [petitioner] had sexual intercourse with [Rebecca]." Lori first told him "one or two months or a year ago," but then she clarified and confirmed that "it was a year ago." The "look on [Lori's] face" caused the officer, despite her claim, to believe that petitioner had engaged in intercourse with "possibl[y] her and her sister [Rebecca] just recently." Still, as the report reflects, Lori characterized Rebecca's abuse as an "incident [that occurred] a year ago." Lori also specifically told the officer that the abuse had stopped—that is, that petitioner was not "bothering" Rebecca any more.

Police advised the Children's Services Division (CSD) of Lori's report. A few weeks after Lori's interview, a CSD worker and a second police officer further investigated the alleged abuse by contacting "the parties involved." Rebecca denied the incidents described by Lori, as did petitioner. Police found no physical evidence of sexual abuse.

Because of the lack of evidence that any crime had been committed, neither the police nor CSD pursued the investigation further.

About 10 years passed. Then, in 1997, Rebecca contacted the police to report that petitioner had sexually abused his six-year-old granddaughter (Rebecca's daughter). In reporting the abuse of the granddaughter, Rebecca revealed to police for the first time that petitioner had raped and sodomized her throughout her childhood. As a result of Rebecca's report of petitioner's conduct, petitioner was indicted in October 1997 and charged with nine sexual offenses involving Rebecca and the granddaughter. The charges included two counts of first-degree rape and two counts of first-degree sodomy of Rebecca that occurred before Lori's 1987 report. Petitioner was convicted of all charges.

■　　Petitioner sought post-conviction relief claiming, *inter alia*, that his trial counsel was constitutionally inadequate because he failed to move to dismiss the four charges based on conduct that occurred before Lori made her statements to police in June 1987. In support of that claim, petitioner relied on ORS 131.125(2), which establishes the statute of limitations for certain specified felony sexual offenses, including first-degree rape and first-degree sodomy. The statute provides that, when the victim is under 18 years of age, a prosecution for one of the specified offenses can be commenced at any time before the victim turns 24 years of age or "within six years after the offense is reported to a law enforcement agency * * *, whichever occurs first[.]" *Id.* According to petitioner, Lori's 1987 statements to police triggered the six-year limitation period for the four counts that involved pre-June 1987 conduct. As a result, petitioner claims that his counsel should have moved to dismiss those four counts as time-barred because the indictment did not issue until October 1997 (*i.e.*, more than 10 years after Lori's report).

The post-conviction court disagreed. The court explained:

"Petitioner asserts that the offenses were reported to the police in 1987. Based on the evidence, the court finds that what was reported was petitioner's inappropriate behavior

with one of his daughter's friends, Robyn. In the course of investigating that report, the police learned from Rebecca's sister Lori that petitioner might be sexually abusing Rebecca. However, Rebecca denied any abuse and, in the absence of any physical evidence, the police dropped the matter. The court finds that the offenses against Rebecca were not reported to police within the meaning of ORS 131.125(2) and therefore the statute of limitation did not bar the prosecution of those offenses in 1997."

Petitioner now appeals, renewing his argument that his counsel was constitutionally inadequate for failing to move to dismiss, on statute of limitations grounds, the charges of rape and sodomy involving Rebecca.

 The principles that govern a claim of inadequate assistance of counsel, as applicable to this case, are well-settled. Under Article I, section 11, of the Oregon Constitution, petitioner must show that his counsel "failed to exercise reasonable professional skill and judgment, and that petitioner suffered prejudice as a result." *Lichau v. Baldwin,* 333 Or 350, 359, 39 P3d 851 (2002). Prejudice occurs when counsel's deficient performance has a "tendency to affect the result of the prosecution" of a petitioner's underlying criminal case. *Id.* (emphasis omitted). Similarly, to establish ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, petitioner must prove that counsel's assistance was unreasonable and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 US 668, 687-94, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

 Whether petitioner in this case was prejudiced by his trial counsel's failure to move to dismiss the four charges depends on whether the motion would have succeeded. *Haynes v. State of Oregon,* 121 Or App 395, 399, 854 P2d 949 (1993) (to determine prejudice, "we must resolve the underlying legal issue").[1] As earlier observed, when the victim of a

---

[1] The state also argues that petitioner's counsel's performance was not constitutionally deficient because the evidence establishes that counsel consciously decided not to move against the charges and exercised reasonable professional judgment in making that decision. Because we conclude that petitioner was not prejudiced, we do not decide whether defense counsel's trial performance was constitutionally deficient.

sexual offense is under age 18, the statute permits a prosecution for the offense to be commenced either before the victim turns 24 years old or "within six years after the offense is reported to a law enforcement agency * * *, whichever occurs first." ORS 131.125(2). Thus, the success of a motion to dismiss the charges based on petitioner's pre-June 1987 conduct would have depended on whether Lori's statements to police constituted a report of the offenses charged for purposes of ORS 131.125(2).

On appeal, the parties reprise the arguments that they made to the trial court. In particular, their arguments focus on whether Lori's statements to police adequately communicated "the facts that form[ed] the basis for the particular offense[s]" with which petitioner was later charged, as required by our decision in *State v. Hutchison*, 176 Or App 363, 367, 31 P3d 1123 (2001). Petitioner asserts that Lori's statements were adequate in that regard because she told police of multiple instances of sexual intercourse between petitioner and Rebecca during the year before the report was made. Therefore, petitioner reasons, the prosecution for rape and sodomy based on that reported conduct was precluded. The state counters that Lori's disclosure to the police did not "actually identify what, if any, specific criminal offense petitioner was committing, because she kept her eyes closed and pretended to be asleep[.]" According to the state, Lori's statements were consistent with a conclusion that petitioner could have been committing any one of a multitude of sexual offenses against Rebecca (*e.g.*, rape, sodomy, sexual abuse, or harassment). Therefore, in the state's view, Lori's statements did not meet the offense-specific requirements of *Hutchison* and did not trigger the six-year statute of limitations under ORS 131.125(2).

As we explain below, we agree that Lori's statements to police did not meet the offense-specific requirements of *Hutchison*. But we conclude that they did not for a different reason from the one that the parties debate. Specifically, we conclude that the instances of sexual contact that Lori described fell outside the time period encompassed by the charges against petitioner. For that alternative reason, Lori's statements do not satisfy the offense-specific requirements of *Hutchison*. We therefore resolve this case without deciding

whether, as the trial court concluded, Lori's statements to police constituted a "report" within the meaning of ORS 131.125(2),[2] or whether, if they did, the statements adequately communicated the factual basis for the particular offenses with which petitioner was later charged.

We begin with *Hutchison* and its construction and application of ORS 131.125(2). There, the victim, then age 12 or 13, told police that the defendant had touched her through her clothing "on the breast area and then on another time in the buttocks area." *Hutchison*, 176 Or App at 365 (internal quotations marks omitted). When police asked the victim whether the defendant had engaged in any other kind of sexual contact with her, she said that he had not. Several years later, however, after the victim turned 18, she reported to police that the defendant had raped and sodomized her before she made the earlier report to police. The defendant was then indicted on multiple counts of rape, sodomy, and sexual abuse against the victim based on the conduct that had occurred before the victim's earlier report. The defendant moved to dismiss the indictment, arguing that the charges were barred because the state had not brought them within six years of that report. The trial court agreed that some of the sexual abuse charges were barred but overruled the motion as to the rape and sodomy charges and other sexual abuse charges. *Id.* at 366-67.

On appeal, we agreed that the victim's report did not trigger the six-year statute of limitations on the rape and sodomy charges or on certain of the sexual abuse charges. *Id.* at 368-69. In reaching that conclusion, we emphasized that the "statute contains no language suggesting that the state is on inquiry notice as to facts not reported" and, rather, that the six-year limitation period is triggered when "the offense" was

---

[2] We express no opinion on whether statements made by someone who is questioned in the course of a police-initiated interview, as Lori was here, rather than who initiated contact with police for purposes of providing them with information, correctly should be considered a "report" within the meaning of ORS 131.125(2). Nor do we express any opinion as to whether a child, unaccompanied by a parent or guardian, is competent to "report" a sexual crime committed against another child to police or other appropriate officials.

reported. *Id.* at 367. Significantly, we rejected the defendant's argument that, because the victim had reported that he had touched her breasts, she had reported "the offense" of sexual abuse and that the "statute of limitations [therefore] began to run as to all instances of that offense[.]" *Id.* at 368-69. We concluded:

> "We find no support in the language of ORS 131.125(2) for the proposition that reporting conduct that may constitute an offense triggers the statute of limitations as to all other conduct that may constitute other instances of the same offense. As we have noted, the statute of limitations as to each of the listed felonies begins to run only when specific factual information about conduct constituting 'the offense' is reported. ORS 131.125(2). It does not begin to run as to an offense based on other conduct that was not reported. Each separate instance of criminal conduct is a separate offense and may be separately charged as such. Hence, the statute of limitations begins to run as to each separate offense only when the facts of each separate offense have been reported. Any other construction effectively reads into the statute an inquiry notice requirement as to all other conduct that may constitute other instances of the same offense as the one that has been reported."

*Id.* at 369.

That aspect of our holding in *Hutchison*—that a report of the commission of a particular offense does not trigger the statute of limitations for all other instances of the same offense—provides a complete answer to this case. The officer questioned Lori on June 19, 1987. As earlier described, the officer asked Lori directly when petitioner had sexual intercourse with Rebecca. Although Lori first answered "one or two months or a year ago," she clarified and confirmed that "it was a year ago." The factual detail that Lori then gave to the officer was noted in the report as describing "the incident a year ago." Lori also explicitly told the officer on June 19, 1987, that petitioner was not engaging in sexual contact with Rebecca "any more" and that he had "not been bothering" Rebecca.

Lori's statements can be viewed in one of two ways. One view, and perhaps the view we are obligated to take

under the applicable standard of review,[3] is that she disclosed one or more incidents of sexual contact between petitioner and Rebecca that had taken place approximately one year before the officer questioned her. That would mean that the described conduct took place sometime around June 1986. The pertinent charges, however, all involved acts of rape and sodomy alleged to have occurred "on or between October 1, 1986 and June 19, 1987." In other words, the charged crimes were committed during a 4- to 12-month period after the conduct that Lori described. Taking that view of Lori's statements, the 1997 charges against petitioner would be statutorily barred only if a report of acts of rape and sodomy committed in June 1986 triggered the statute for all other acts of rape and sodomy that petitioner later committed. *Hutchison* expressly rejected that "inquiry notice" approach, however, and held that other instances of the same offense are not barred. *Id.* at 369.

The other possible view of Lori's statements is that the conduct she recounted had occurred one or two months before the police interview on June 19, 1987, and then had stopped. At the very least, that would mean that Lori did not tell the police that petitioner had committed any crimes between mid-May and mid-June 1987. The indictment encompassed that time period; however, it alleged only two acts of rape and two acts of sodomy "on or between October 1, 1986 and June 19, 1987." Rebecca testified at petitioner's criminal trial that, *throughout 1986 and 1987*, petitioner forced her to engage in oral sexual activity almost every night and in sexual intercourse every other night or every two or three nights. Thus, Rebecca's testimony substantiated that petitioner had committed crimes of rape and sodomy other than any that Lori had recounted and that those other crimes occurred within the time period of the indictment.[4] Again,

---

[3] *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (evidence in post-conviction cases should be viewed in the light most favorable to the resolution in the trial court).

[4] Even assuming, without deciding, that petitioner's criminal trial counsel could have successfully moved on statute of limitations grounds to limit the time frame covered by the indictment, petitioner has not shown that he was prejudiced by any failure in that regard. The jury's determination of petitioner's guilt in the criminal trial necessarily rested on a determination that Rebecca was credible.

under *Hutchison*, a report of some instances of a particular offense does not trigger the statute of limitations for all other instances of the same offense. *Id.* Therefore, the charges against petitioner were not barred.

For those reasons, even if petitioner's counsel had moved to dismiss the charges involving Rebecca as time-barred under ORS 131.125(2), that motion would properly have been denied. Accordingly, the petition for post-conviction relief was properly denied.

Affirmed.

---

Petitioner does not explain why, even if the indictment were limited to conduct occurring between mid-May and June 19, 1987, the jury would not have credited Rebecca's testimony that petitioner's crimes of rape and sodomy continued during that period.