Argued and submitted April 22, Portland Community College, Portland, affirmed November 12, 2008, petition for review denied March 4, 2009 (346 Or 66)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RUBY DARLENE McCROREY,
*Defendant-Appellant.*

## Washington County Circuit Court
C051362CR; A130878

196 P3d 106

Andrew S. Chilton argued the cause for appellant. With him on the briefs was Chilton, Ebbett & Galli, LLC.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this criminal case, defendant was convicted of aiding and abetting her husband in the commission of 17 sex offenses against defendant's teenaged daughter between 1995 and 1999. On appeal, she contends that nine of those convictions were barred by the six-year statute of limitations. She argues that the state received notice of her role in the abuse of her daughter as early as 1997 and that, as a result, the state's 2005 prosecution is time barred as to any acts that occurred more than six years before the latter date. In the alternative, she contends that the trial court erred in ordering that the sentences on some of those convictions be served consecutively without jury findings on the facts necessary to a lawful order that sentences be served consecutively. Defendant concedes that she did not advance that argument to the trial court, but she asks that we consider the matter as plain error. We affirm.

We recount the facts in the light most favorable to the state. *State v. Hutchison*, 176 Or App 363, 365, 31 P3d 1123 (2001). Defendant married Burris in 1984. At the time, she had two young daughters from an earlier relationship—C (the victim in this case), born in 1981, and T, born in 1983. In 1985, the family moved to Idaho, to be near Burris's family.

Beginning in 1991 or 1992, Burris began to sexually abuse C, although, at that point, he did not have intercourse with her. At approximately the same time, Burris's 14-year-old nephew, S, came to live with the family. At some point during the following year, defendant began regularly having sex with S. Defendant and Burris thereafter entered into an agreement that she would be permitted to continue to have sex with S, while Burris would be permitted to have sexual contact with C. In 1995, the family—including S—moved to Oregon. Later that year, Burris demanded that C have intercourse with him. Burris continued to sexually abuse C over the course of the next four years.

Meanwhile, in 1997, S raped C's sister, T. He was convicted and sent to prison. T was placed in foster care. During the summer of 1997, while in foster care, T reported to her foster mother that defendant had been sharing a bedroom with S, and Burris had been sharing a bedroom with C.

T reported that she had seen Burris and C "kissing, hand-holding, and cuddling," and that she had seen condoms in Burris's bedroom. T told the foster mother that, at some point in late 1996 or early 1997, C was afraid that she had become pregnant. The foster mother reported the matter to Washington County Services to Children and Families (SCF). The SCF caseworker talked to C, who denied having been sexually abused either by Burris or S. SCF reported the matter to the police.

In October 1997, S's mother notified SCF that she had received a letter from S in which S described the contract between defendant, Burris, C, and himself, and stated that he had been involved in some "threesomes and foursomes," including C. That same month, the family had a therapy session with its caseworker, Dobbs. S's allegations were shared with defendant and she denied them, stating that she thought "[S] had done this for revenge," because he was now in jail for his rape of T, and because defendant had written him a "nasty" letter telling him of her anger and resentment over his rape of her daughter. At that same meeting, T asserted that Burris had been having sex with C. According to Dobbs's notes, C "strongly denies the allegation and appears visibly disturbed that they have come up."

In November 1997, the police followed up on the SCF report. The investigating officer spoke with C, who "denied that anything had taken place in the past sexually involving [S] or Burris and she denied that anything was presently happening to her sexually involving Burris." The investigating officer ended the report with a recommendation that the case be closed as unfounded.

In 1999, C gave birth to Burris's son. When that child was two or three years old, police received a report that the child had been abused by his father. It was at that point that C reported to the police Burris's years of sexual abuse and defendant's complicity in that abuse, beginning in the early 1990s.

In May 2005, the state charged defendant with 17 different counts, based on the theory that she aided and abetted Burris in his abuse of C. Nine of those counts related to abuse that occurred before 1998: Count 1 (sodomy I) alleged

acts occurring between July 4 and July 25, 1995; Count 2 (sexual abuse I) acts between July 4 and July 25, 1995; Counts 3, 4, and 5 (sodomy I) acts between July 26 and October 2, 1995; and Counts 6, 7, 8, and 9 (rape I) acts between October 3, 1995 and July 25, 1997. As to each of those counts, the indictment alleged that the victim "is less than 24 years old and never reported the above crime to a law enforcement agency or other governmental agency." The remaining eight counts concerned acts that occurred on or after December 1, 1998, and are not at issue in this appeal.

Defendant moved to dismiss the nine counts on statute of limitations grounds. According to defendant, the state had received a report of ongoing abuse in 1997 when T reported to her foster mother and the foster mother passed the information along to SCF and the police. As a result, defendant argued, the six-year statute of limitations required the state to bring charges against her for any abuse that occurred before that report by 2003. Because the state waited until 2005 to bring charges against her for abuse that happened before the 1997 report, she argued, those charges are time barred. The trial court denied the motion. The trial court explained that the applicable statute applies only upon a report of the specific offenses that the defendant is charged with having committed and is not triggered by mere general allegations of abuse.

The matter was tried to the court, which found defendant guilty on all counts. At sentencing, the court ordered that the sentences on Counts 3 and 4 should run consecutively to the sentences on the other counts. Defendant did not challenge the court's authority to impose consecutive sentences.

On appeal, defendant first contends that the trial court erred in denying her motion to dismiss the first nine counts of the indictment on statute of limitations grounds. She contends that the 1997 reports to T's foster mother, to SCF, and to the police were sufficient to trigger the running of the statute of limitations and thus bar prosecution of the nine counts that were based on conduct that occurred more than six years before the 2005 indictment. Defendant claims

support for her position in our decision in *State v. Sauls*, 197 Or App 545, 106 P3d 659 (2005).

The state responds that defendant's reliance on *Sauls* is misplaced and that, in this case, the 1997 reports did not contain any information pertaining to the particular offenses with which defendant was charged in this case. According to the state, T's suspicions were, by her own admission, merely suspicions based on no direct evidence of abuse. The state contends that there was no report of any particular offense that Burris committed against the victim in this case, C. Moreover, the state contends, there is no report of any offense at all committed by *defendant* involving C.

The relevant statute of limitations is set out in ORS 131.125(2) (1991),[1] which provides, in part:

"A prosecution for any of the following felonies may be commenced within six years after the commission of the crime or, if the victim at the time of the crime was under 18 years of age, any time before the victim attains 24 years of age or within six years after the offense is reported to a law enforcement agency or other governmental agency, whichever occurs first:

"* * * * *

"(d)   Rape in the first degree under ORS 163.375.

"* * * * *

"(g)   Sodomy in the first degree under ORS 163.405.

"* * * * *

"(k)   Sexual abuse in the first degree under ORS 163.427."

Thus, the statute of limitations for each of the offenses in this case is six years from the date of a "report" of "the offense" or the victim's twenty-fourth birthday, whichever is first.

In *Hutchison*, we addressed what constitutes a "report" of "the offense" sufficient to trigger ORS 131.125(2). We concluded that the statute applies when there has been

---

[1] The statute was amended in 2005, Or Laws 2005, ch 839, § 1, but those amendments do not apply to this case.

"actual communication of the facts that form the basis for the particular offense" with which the defendant has been charged. 176 Or App at 368. We rejected the notion that the statute is triggered merely by a report of facts that might put the state on "inquiry notice" as to facts not actually reported. *Id.* We emphasized that the report that triggers the statute of limitations is offense specific. A report of facts that might constitute an offense—even a sexual offense—by itself, is not enough; the facts must constitute a report of *the* offense with which the defendant has been charged:

> "[T]he statute of limitations as to each of the listed felonies begins to run only when the specific factual information about conduct constituting 'the offense' is reported. ORS 131.125(2). It does not begin to run as to an offense based on other conduct that was not reported. Each separate instance of criminal conduct is a separate offense and may be separately charged as such. Hence, the statute of limitations begins to run as to each separate offense only when the facts of each separate offense have been reported. Any other construction effectively reads into the statute an inquiry notice requirement as to all other conduct that may constitute other instances of the same offense as the one that has been reported."

*Id.* at 369.

Several cases illustrate how ORS 131.125(2) applies. In *State v. Harberts*, 198 Or App 546, 108 P3d 1201 (2005), *rev den*, 341 Or 80 (2006), for example, the victim was referred to CARES in 1989 for evaluation of possible sexual abuse, after the defendant had murdered another member of the household in the course of sex acts. The victim denied any sexual abuse at that time. Years later—after the defendant had been convicted of the murder—the victim came forward and reported that the defendant had abused her, as well. The defendant was charged with sexual abuse on the basis of that report. He moved to dismiss the charge on statute of limitations grounds, arguing that he had been charged too long after the initial 1989 report by CARES. The trial court denied the motion, and we affirmed. Citing *Hutchison*, we concluded that the CARES report did not transmit any information that formed the basis for the charges in that case, and "the victim reported no facts to a law enforcement or other governmental

agency in 1989 other than that she was *not* sexually abused." *Harberts*, 198 Or App at 559 (emphasis in original).

In *Hall v. Lampert*, 196 Or App 285, 100 P3d 1138 (2004), *rev den*, 338 Or 301 (2005), a neighbor called the police in June 1987 to report that the defendant had sexually abused her daughter. When an officer interviewed the daughter, she said rather ambiguously that the defendant had had sexual intercourse with her sister "one or two months ago or a year ago." *Id.* at 288. The police investigated, but the sister denied having been abused, and the police found no other evidence of sexual abuse. The police did not pursue the matter further. Approximately 10 years later, the sister who had denied having been abused came forward and reported that the abuse in fact had occurred. The defendant was charged with rape and sodomy that was alleged to have occurred sometime between October 1986 and June 1987. Following conviction on those charges, the defendant filed a post-conviction petition, alleging that his lawyer had been constitutionally inadequate in failing to assert a defense based on the running of the statute of limitations, which he asserted had begun to run upon the report of abuse in June 1987. We rejected the contention, concluding that the sister's report in June 1987 was too ambiguous as to the time the abuse occurred—either one or two months or a year before the June 1987 report. If the abuse had occurred a year before the report, we explained, that would have constituted a report of conduct that was not within the period of time that was alleged to have been the time that the rape and sodomy occurred. *Id.* at 293-94.

In *Sauls*, in contrast, we concluded that there had been a sufficiently specific report of the facts that formed the basis for the offense charged. In that case, the defendant had been charged in December 2001 with third-degree sexual abuse, based on allegations that she had had various forms of sexual contact with the 16-year-old victim sometime between March 15 and March 20, 1996. The defendant argued that the charges were time barred, given that her ex-husband had reported to police on March 16, 1996, that the defendant had an ongoing sexual relationship with the victim and given that, a year later, the ex-husband had reported that the defendant continued to have sex with the

victim and that she was then six months pregnant by him. The state argued that the reference to "sexual relationship" was too vague to constitute a report of the specific offense with which the defendant had been charged. We concluded that, "[w]hile the term 'sexual relationship' might be somewhat ambiguous in some contexts, it is not ambiguous in this context," in which it had been reported that the defendant had become pregnant as a result of her sexual contact with the victim. 197 Or App at 552.

■      With the foregoing principles and cases in mind, we turn to the reports in this case. At the outset, it is clear that the reports that were made in 1997 did not transmit any information pertaining to five of the counts at issue, *viz.*, Counts 1, 2, 3, 4, and 5. Four of those counts (all but Count 2) alleged acts of oral sodomy, three of which occurred some two years before the 1997 reports. Count 2 alleged first-degree sexual abuse, which also occurred some two years before the 1997 reports. None of the 1997 reports included any information about sexual contact that had occurred two years earlier, and none included any information about acts of oral sodomy. We reject defendant's contention that those counts were time barred without further discussion.

■      The remaining counts alleged acts of rape committed between October 1995 and July 1997. None of the 1997 reports transmitted any specific facts that formed the basis for those charges. In that regard, the information that was transmitted at that time is more like the reports in *Hutchison* and *Hall*, and unlike the report in *Sauls*, in that the information that was included in the reports was too vague and ambiguous to trigger the statute of limitations as to the specific charge of rape. T's report, for example, recounted the fact that she had seen Burris and C "kissing, hand-holding, and cuddling." She reported that she *suspected* that the two might be engaging in sexual intercourse, but she did not report that she witnessed any acts that might have formed the basis for a charge that Burris had raped C, much less that defendant had in any way aided and abetted the commission of that offense. Moreover, the indictment alleged that the rapes occurred as early as October 1995, and nothing that T reported concerned conduct that had occurred that early. The November 1997 police report similarly recounted that S's

mother told police that S had written a letter alleging that he, Burris, C, and defendant had, during some undefined period of time, contracted with one another to "do anything they wished to each other sexually" in some unspecified ways. The police report also recounted that C denied any such contract or conduct at that time. In that regard, the police report seems to us especially close to the report that we found insufficient to trigger the statute of limitations in *Hutchison*, in which the police received a very general report from CARES about suspicions of possible sexual contact, which the victim denied until many years later. 176 Or App at 369. We therefore conclude that the 1997 reports were insufficient to trigger the statute of limitations as to the remaining charges against defendant and that the trial court did not err in denying her motion to dismiss on statute of limitations grounds.

Defendant also contends that the trial court committed plain error in ordering that the sentences on some of the convictions be served consecutively. She concedes that her argument is foreclosed by *State v. Perez*, 340 Or 310, 131 P3d 168 (2006). Her sole contention is that the case was wrongly decided. Defendant is free to make that argument to the Supreme Court. In the meantime, the matter is controlled by that decision.

Affirmed.