Argued and submitted December 28, 1998, affirmed April 14, 1999

# A. KENT GORHAM,
*Appellant,*

*v.*

# S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

(96C-12929; CA A100889)

978 P2d 443

Marc D. Blackman argued the cause for appellant. With him on the briefs was Ransom Blackman.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this proceeding for post-conviction relief, petitioner alleges that he received inadequate assistance of counsel at his criminal trial on multiple counts of rape and sexual abuse. In particular, he alleges that his criminal trial counsel was inadequate in not calling expert witnesses to establish a "false memory" defense and to attack the findings of the state's experts. The post-conviction court found that, in failing to call expert witnesses, criminal trial counsel failed to exercise reasonable professional skill and judgment. The court nevertheless concluded that petitioner is not entitled to post-conviction relief, because such expert testimony would not have had a tendency to affect the result of the criminal trial. Petitioner appeals, contending that the post-conviction court erred in concluding that he did not suffer prejudice as a result of his criminal trial counsel's inadequacies. He further contends that he is entitled to post-conviction relief on the ground that the evidence against him in the criminal trial was so unreliable as to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The state cross-assigns error to the trial court's finding that criminal trial counsel failed to exercise reasonable professional skill and judgment. We conclude that the post-conviction court correctly determined that any inadequacies of criminal trial counsel did not have a tendency to affect the outcome of the trial and affirm on that basis, without reaching the state's cross-assignment.

■ To prevail on an inadequate assistance of counsel claim under Article I, section 11, of the Oregon Constitution, a petitioner must show that counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudice as a result of counsel's failure to do so. *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). *See Krummacher v. Gierloff*, 290 Or 867, 883, 627 P2d 458 (1981) ("only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude"). A similar standard applies to claims based on the Sixth Amendment to the United States Constitution. *Chew v. State of Oregon*, 121 Or App 474, 477, 855 P2d 1120, *rev den* 318 Or 24 (1993).

Petitioner was found guilty after a jury trial on three counts of first-degree rape and three counts of first-degree sexual abuse, committed against his five-year-old daughter, L. Petitioner's first two trials ended in mistrial, and his third trial led to his conviction. Petitioner challenges the adequacy of trial counsel who represented petitioner in the second and third trials. During the second trial, petitioner's counsel called two expert witnesses, a physician and a child psychiatrist, to attempt to rebut the state's medical evidence and the evidence provided by the victim's play therapist. That trial ended in a mistrial, after which one of the jurors spoke with trial counsel about the case and told him that the jury felt that his experts had been discredited by the prosecution on cross-examination, because they were not able to identify specific facts in evidence to support their conclusions. Trial counsel decided that it would be a better tactic at the third trial not to call expert witnesses, but instead decided to focus on cross-examining L to bring out inconsistencies in her testimony.

At trial, the state first called L, who was then eight years old. L's testimony consumed the better part of three days. L testified to numerous incidents when her father would enter the room in which she was sleeping, would touch her eyes, mouth, chest, and vagina, and would rape her.

The state then called L's therapist, Mull, who specialized in nondirective play therapy for children. Mull described the course of her therapy with L and explained that L's play, and statements made during play, led her to suspect that L might have been sexually abused. Mull testified that L eventually disclosed that her father rolled on top of her in bed, he rubbed her mouth, pushed up her nightgown, and put his fingers in her vagina. L told Mull that she told him to stop, but he would not, and that he told her not to tell.

A pediatrician, Young, then testified about her examinations of the victim. She had over 20 years' experience and had received over 300 hours of training in the area of child sexual abuse. In her first examination of L, Young noted some hymenal abnormalities, but did not diagnose sexual abuse. In another examination the following year, after L had disclosed sexual abuse to her therapist, Young found further

hymenal abnormalities. During that examination, L disclosed further abuse.

The defense focused on trying to demonstrate that the abuse could not have occurred the way L described it. Petitioner testified, indicating that he had slept on beds and in couches with his daughters, but that he had not abused them. The jury returned a verdict of guilty on all counts. Petitioner appealed, and we affirmed the convictions without opinion.

Petitioner brought this action for post-conviction relief, alleging that trial counsel provided inadequate assistance of counsel by failing to call expert witnesses to challenge the testimony of Mull and Young and that he was entitled to post-conviction relief, because the evidence against him in the criminal trial was inherently unreliable. The trial court granted the state's motion to strike the latter claim. Petitioner put on testimony from a criminal defense lawyer who opined that trial counsel failed to provide adequate assistance of counsel. Petitioner also introduced into evidence a declaration of Dr. Bruck, a developmental psychologist. Bruck declared that she had reviewed the evidence, including testimony and exhibits and, based on that information, opined that L had been subjected to suggestive influences and coercion and had been asked misleading questions, which caused inaccurate and unreliable reports of sexual abuse.

Petitioner's counsel also provided an affidavit that he had found an expert witness, Dr. Sabin, who would testify that the pediatrician's methods of examination were not acceptable, that L's medical records did not support a diagnosis of sexual abuse, that abnormalities similar to those in L's hymen also had been found in nonabused children. Finally, this expert was prepared to testify about the pediatrician's "lack of objectivity."

As we have noted, the post-conviction court found that criminal trial counsel failed to exercise reasonable professional skill and judgment, but concluded that the failure of trial counsel did not have a tendency to affect the outcome of

the trial. On appeal, petitioner argues that the post-conviction court erred in concluding that petitioner did not establish that trial counsel's failure to present expert testimony such as that of Bruck and Sabin had a tendency to affect the result of the prosecution.

■      We assume for purposes of this assignment of error only that the post-conviction court's conclusion that trial counsel's decision not to call experts in the third trial after his experts had been discredited in the second trial was not a reasonable tactical decision. The question is whether trial counsel's omission had "a tendency to affect the result of the prosecution[.]" *Stevens*, 322 Or at 110. We agree with the post-conviction court that it did not. We have reviewed the testimony of the therapist and the pediatrician and have reviewed the literature provided by the parties concerning interviewing techniques and genital examinations for child sexual abuse. None of the literature or the expert opinions leads to a conclusion that the therapist's or pediatrician's interactions with L were unduly suggestive or coercive, or that the pediatrician had no basis for suspecting sexual abuse.

For the most part, Bruck's opinions do not appear to be based on what the therapist and pediatrician testified occurred, but seem to be based on the belief that they testified falsely about what had occurred. However, the psychologist would not have been permitted to comment on the credibility of other witnesses. *See State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) ("a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness[.]"). Given that the greater part of that expert's opinions would not have been admissible at trial, we agree with the trial court that the testimony would not have had a tendency to affect the outcome in this case.

As to the information provided by Dr. Sabin concerning the pediatrician's diagnosis of sexual abuse, we likewise conclude that such testimony, while relevant, would not have had a tendency to affect the verdict in this case. Sabin's testimony to the effect that hymenal abnormalities had been found in nonabused children would have been relevant, but

given that the pediatrician's diagnosis was based on a great deal more than the presence of hymenal abnormalities, we do not think testimony such as Sabin's would have had a tendency to affect the verdict in this case. Concerning Sabin's willingness to testify to the pediatrician's "lack of objectivity," no details have been provided as to what Sabin based that opinion on, and we do not see how such testimony would have been relevant or admissible or how it would have had a tendency to affect the verdict.

Petitioner was convicted of these crimes after the victim testified over the course of three days about being sexually abused. The victim was cross-examined extensively, as were the numerous witnesses to whom she had disclosed the abuse. Petitioner testified that the abuse did not occur. A pediatrician testified about her medical findings, which were not definitive, but were more supportive of L's version of what had occurred than of petitioner's version. Even if petitioner had successfully introduced expert testimony from a physician that some of the medical findings were similar to those of nonabused children, and from a psychologist that children are easily led to fabricate allegations of sexual abuse, there is little likelihood that such evidence would have affected the verdict. The post-conviction court correctly concluded that trial counsel's failure to call experts such as Bruck and Sabin did not have a tendency to affect the verdict.

Petitioner's due process arguments do not merit discussion.

Affirmed.