Argued and submitted November 3, 2000, decision of Court of Appeals and judgment of circuit court affirmed October 18, 2001

## A. KENT GORHAM,
*Petitioner on Review,*

*v.*

## S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent on Review.*

(CC 96C-12929; CA A100889; SC S46642)

34 P3d 161

Marc D. Blackman, Ransom Blackman, Portland, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Kendra M. Matthews.

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

LEESON, J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case. De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## LEESON, J.

In this post-conviction proceeding, petitioner contends that his convictions for sex abuse and rape must be set aside because he received inadequate assistance of trial counsel in violation of Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution.[1] The post-conviction court held that, by not investigating experts regarding impeachment and credibility issues for petitioner's third trial before deciding not to use them, petitioner's trial counsel had not exercised reasonable professional skill and judgment. Nonetheless, that court denied relief on the ground that petitioner had not shown prejudice. The Court of Appeals affirmed. *Gorham v. Thompson*, 159 Or App 570, 978 P2d 443 (1999). We allowed petitioner's petition for review and now affirm the decision of the Court of Appeals and the judgment of the post-conviction court on a different ground.

The relevant events giving rise to petitioner's post-conviction challenge in this proceeding are as follows. In 1991, a grand jury indicted petitioner on three counts of first-degree rape and three counts of first-degree sexual abuse against his daughter L,[2] in 1989 and 1991, when she was five and seven years old. Petitioner was tried three times. The first trial, in July 1992, ended in a mistrial. Thereafter, petitioner retained Morrow, the lawyer whose conduct is at issue in this proceeding, to represent him at the second trial.

Petitioner's second trial began in October 1992. At that trial, Morrow cross-examined prosecution witnesses and presented defense witnesses to undermine the reliability of L's reports of petitioner's sexual acts. Morrow also offered the

---

[1] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

The Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Gideon v. Wainwright*, 372 US 335, 342-45, 83 S Ct 792, 9 L Ed 2d 799 (1963).

[2] We refer to the minor child by her initial.

testimony of two expert witnesses, a physician, Dr. Moore, and a child psychiatrist, Dr. Boverman. The purpose of Moore's testimony was to challenge the physical examination methodology that a pediatrician, Dr. Young, had used when she had examined L's genitalia in 1990 and 1991, and had reported "nonspecific" findings of sexual abuse, based in part on "bumps" and "dips" in L's hymen. The purpose of Boverman's testimony was to establish that children of L's age are susceptible to suggestion, that inappropriate questioning can lead children to make false disclosures of sexual abuse, that the inconsistencies in L's accounts of what had occurred were the result of improper questioning and "contamination" through play therapy with a psychologist, Gregory-Mull, and that Gregory-Mull inappropriately had used anatomically correct dolls with L before L had made a clear disclosure of sexual abuse.

During its deliberations in the second trial, the jury informed the trial court that it had seen an exhibit that it did not believe had been introduced as evidence. The court had the exhibit removed, instructed the jury to disregard it, and told the jury to continue its deliberations. The jury convicted petitioner on all counts.

After the verdict, Morrow talked to one of the jurors. He learned that, before seeing the exhibit, five of the twelve jurors had voted to acquit petitioner. However, after seeing the exhibit, at least three of the five jurors who had voted to acquit changed their votes. Morrow also learned that, in the jury's view, the prosecution's cross-examination had discredited both Moore's and Boverman's testimony. Morrow then wrote a letter to petitioner explaining that the information that he had obtained from the juror meant that the trial court probably would grant a motion for mistrial, that petitioner had a chance of prevailing in a third trial, and that "[t]here are things we can do better next time." The trial court subsequently granted petitioner's motion for a mistrial.

Petitioner's third trial began in May 1993, approximately seven months after the second trial had begun. Before trial, Morrow learned that the prosecution's case at the third trial would be a replay of the second trial and that the prosecution would call the same witnesses. According to Morrow's

affidavit in this proceeding, he decided that it would be "a better tactic at the third trial not to call expert witnesses, subjecting them to cross-examination by the prosecutor." The accused testified on his own behalf at the third trial, as he had previously. He denied having had any sexual contact with L. After hearing all the evidence, the jury returned guilty verdicts on all counts, and the Court of Appeals affirmed the convictions. *State v. Gorham*, 131 Or App 267, 884 P2d 1230, *rev den* 320 Or 493 (1994).

■　　As noted, petitioner brought this post-conviction proceeding, alleging that he had received inadequate assistance of counsel at his third trial. *See* ORS 138.530(1)(a) (post-conviction relief available for substantial denial of rights under state and federal constitutions).[3] To prevail on his claim of inadequate assistance of counsel, petitioner had to make two showings. First, petitioner had to demonstrate by a preponderance of the evidence that Morrow had failed to exercise reasonable professional skill and judgment. *See Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) (identifying two-pronged test for post-conviction relief). Second, even if Morrow had failed to exercise reasonable professional skill and judgment, petitioner had to demonstrate that that failure would have had a tendency to affect the result. *Id.*

As relevant to the issue on review in this proceeding, petitioner alleged that Morrow had failed to exercise reasonable professional skill and judgment in failing to present expert opinion evidence on credibility and impeachment matters. Petitioner submitted an affidavit from Dr. Bruck, a developmental psychologist, stating that, in Bruck's opinion, L's trial testimony

"* * * is characterized by so many poor investigative techniques as to render the reports unreliable. Their reports appear to be products of coercive and pressurized interview techniques conducted over a period of 18 months. As well there are a number of milder suggestive influences that

---

[3] In this case, the inquiry under the Sixth and Fourteenth Amendments to the United States Constitution is the same as the inquiry under Article I, section 11, of the Oregon Constitution. *See Krummacher v. Gierloff*, 290 Or 867, 871, 627 P2d 458 (1981) (determining that "[i]t is sufficient for the purposes of this case to examine the right to counsel as if the rights assured under each constitution are identical").

could interact with these more coercive techniques to produce her testimony."

The petition also averred that a "behavior pediatrician," Dr. Sabin, would testify that the manner in which Young had conducted her examination and obtained L's medical history did not meet minimum professional standards, and that Young's interpretation of her findings conflicted with medically accepted standards.

At the post-conviction hearing, petitioner submitted Bruck's affidavit as well as the testimony of a defense lawyer, Matasar. Matasar expressed the opinion that, to provide adequate assistance of counsel, Morrow had to present expert testimony to the jury at petitioner's third trial, that it was unreasonable not to present such testimony, that there was no tactical reason not to present expert testimony if it were available, and that he, Matasar, had found no evidence that Morrow had investigated the use of expert witnesses at petitioner's third trial. Matasar expressed no opinion about Morrow's investigation and use of experts at petitioner's second trial.

Following the hearing, the post-conviction court found that Morrow had presented expert testimony from Moore and Boverman at petitioner's second trial; that Boverman had testified about circumstances that could create a risk that children would make false accusations of sexual abuse; that the prosecution had discredited both Moore and Boverman on cross-examination; that Morrow had chosen not to use expert witnesses in the third trial; and that Morrow instead had "extensively cross-examined the complaining witness and the prosecution's witnesses, including experts." Those findings are not contested. The post-conviction court then held:

"1.   Trial counsel, in *failing to investigate experts on the impeachment and credibility issues,* failed to exercise reasonable professional skill and judgment in defending petitioner.

"2.   Petitioner did not establish that the trial counsel's decision to rely on extensive cross-examination of the complaining witness and the prosecution witnesses had a tendency to affect the result of the prosecution.

"3.   Trial counsel's omissions cannot be regarded as of a constitutional magnitude.

"4.   In the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied assistance of trial counsel as guaranteed by either the United States Constitution or the Constitution of the State of Oregon."

(Emphasis added.)

In a letter to counsel that clarified its findings and conclusions about Morrow's failure to investigate experts before deciding not to use them at petitioner's third trial, the post-conviction court explained:

"The credibility and the impeachment of the complaining witness issue was a major focus of defense counsel. * * * *A decision not to pursue expert witnesses for possible impeachment of the child and to preclude cross examination by the District Attorney should logically be made after investigating what experts had to say on the subject. It does not seem that 'a tactic' could be determined to be the 'better' until the experts' input was known.* The same rationale carries to defense counsel's decision to focus solely on cross examination of the child witness.

"Trial counsel, in *failing to investigate experts on the impeachment and credibility issues,* failed to exercise reasonable professional skills and judgment in defending petitioner.

"* * * Petitioner must make a showing that the omission of trial counsel prejudiced the defense."

(Emphasis added.)

On appeal, petitioner assigned error to the post-conviction court's holding that petitioner had failed to establish prejudice. The state cross-assigned error to the post-conviction court's holding that Morrow had failed to exercise reasonable skill and judgment in deciding not to use experts at the third trial without first investigating what they would say. The state argued that, having been through the second trial—at which he had both investigated and presented expert testimony—Morrow already knew what experts would say. Under those circumstances, the state contended, Morrow's decision not to use experts at the third trial was an

informed tactical choice that did not require additional investigation. Petitioner asserted that the post-conviction court had found that Morrow had provided inadequate assistance of counsel by not *presenting* expert testimony at the third trial.

The Court of Appeals assumed, without discussion, that "[Morrow's] decision not to call experts in the third trial after his experts had been discredited in the second trial was not a reasonable tactical decision." *Gorham*, 159 Or App at 575. Nonetheless, that court affirmed the post-conviction court on the ground that petitioner had failed to establish that Morrow's decision to rely on extensive cross-examination of L and the other prosecution witnesses at the third trial had a tendency to affect the result of the prosecution. *Id.*

On review, petitioner contends that the Court of Appeals misapplied the second, or "prejudice," prong of the post-conviction relief test. The state defends that court's analysis of the prejudice prong. However, the state contends that the Court of Appeals erred in not addressing the first prong of the post-conviction analysis. It argues that Morrow was not required to treat preparation for the third trial as though he were writing on a "clean slate." Rather, Morrow was entitled to rely on his investigation and use of experts at petitioner's second trial to inform his decision not to call such experts at petitioner's third trial. If the state's argument on that point is well taken, then it is dispositive. Accordingly, we turn to the state's argument.

■■ It is well established that a reviewing court will not second-guess a lawyer's tactical decisions in the name of the constitution unless those decisions reflect an absence or suspension of professional skill and judgment. *Krummacher*, 290 Or at 875-76. However, tactical decisions must be grounded on a reasonable investigation. *Id.* at 875; *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). The question in each case is whether trial counsel's investigation was legally and factually appropriate to the case. *Id.*

■ In this case, by the time that Morrow began preparing for petitioner's third trial, he had both investigated and used expert witnesses only a few months earlier at petitioner's second trial. Nothing changed during the time

between the two trials that would have compelled Morrow to investigate anew expert testimony; the facts, law, and theories that the experts had relied on remained the same. Morrow also had learned after the second trial that the state intended to present the same case at the third trial that it had presented at the second trial and that it would call the same witnesses in its effort to prove petitioner's guilt. Based on his investigation and use of experts on credibility and impeachment issues at the second trial, Morrow believed that it would be a better strategy at the third trial not to subject defense experts to the prosecution's cross-examination. Accordingly, he decided not to call experts on those issues at petitioner's third trial.[4] On those facts, the post-conviction court erred in holding that Morrow failed to exercise reasonable professional skill and judgment by not investigating experts regarding impeachment and credibility issues for petitioner's third trial before deciding whether to present such experts.

The facts of this case differ from the situation in which a lawyer makes a tactical decision about how to conduct a trial without ever having undertaken any investigation on which to ground that decision. In *Stevens*, for example, in preparing for the petitioner's trial on charges of sexual abuse, trial counsel did not interview potential witnesses whose testimony might have had a bearing on the complaining witness's credibility, and trial counsel did not investigate at all whether any medical evidence supported the petitioner's claim that he was sexually impotent. 322 Or at 105-06. This court held that trial counsel's investigation was not legally and factually appropriate to the case, *id.* at 108-09, and that trial counsel had not exercised reasonable professional skill and judgment, *id.* at 110. In this case, by contrast, Morrow recently had both investigated and used experts on credibility and impeachment issues at petitioner's second trial. The second trial turned out to be a "dry run" for the third trial a relatively short time later. Morrow's decision not to present expert testimony at the third trial was grounded

---

[4] Petitioner does not challenge Morrow's preparation for and conduct at the third trial in any other respect.

on his investigation and use of experts at petitioner's second trial.

As we have explained, the post-conviction court and the Court of Appeals denied relief in this proceeding on the ground that petitioner had not satisfied the second—or prejudice—prong of the test for post-conviction relief. Because we hold that petitioner has not demonstrated that Morrow failed to exercise reasonable professional skill and judgment under the first prong of the post-conviction test, we do not address petitioner's arguments under the prejudice prong of the post-conviction test.[5]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[5] Petitioner also contends that the evidence that the state presented against him at his third trial was so unreliable that due process principles precluded his conviction. Petitioner did not challenge the reliability of the state's evidence at trial or on direct appeal. *See Palmer v. State of Oregon,* 318 Or 352, 867 P2d 1368 (1994) (failure to raise issue at trial that reasonably could have been raised at trial generally precludes post-conviction relief on that ground). We decline to address petitioner's due process argument on review.