Argued and Submitted September 20, 2004, affirmed March 9, petition for review denied July 19, 2005 (339 Or 66)

# MICHAEL ALLEN BROWN,
## *Appellant,*

*v.*

# Robert SCHIEDLER,
## Superintendent,
## Two Rivers Correctional Institution,
## *Respondent.*

## CV02-0313; A121605

108 P3d 82

John Henry Hingson III argued the cause and filed the briefs for appellant.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner appeals a judgment denying his petition for post-conviction relief in which he alleged that he was denied adequate assistance of trial counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. ORS 138.510-138.680. We affirm.

After an incident during which petitioner attacked Powers with a baseball bat, petitioner was indicted for attempted murder, ORS 161.405; ORS 163.115, assault in the second degree, ORS 163.175,[1] and burglary in the first degree, ORS 164.225. He was acquitted by a jury of attempted murder but convicted of assault in the second degree and burglary in the second degree, ORS 164.215.

In his petition for post-conviction relief, petitioner seeks to have both convictions vacated. However, his primary focus on appeal appears to be the conviction for assault in the second degree. The facts relevant to that conviction are as follows. Petitioner and his wife separated in 2000. According to the state's evidence at trial, petitioner went to the door of his estranged wife's house on May 1, 2000, carrying a baseball bat, and knocked. Powers opened the door. When he saw Powers, petitioner became enraged because he believed that Powers was having an affair with his wife. Petitioner reached into the apartment, grabbed Powers by the shirt, and started hitting him on the head with the bat.[2] Petitioner yelled obscenities at Powers and accused him of having a sexual relationship with his wife. Powers testified that petitioner struck him on the head four or five times with the bat.[3]

---

[1] ORS 163.175(1) provides:

"A person commits the crime of assault in the second degree if the person:

"(a) Intentionally or knowingly causes serious physical injury to another; or

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life."

[2] Powers sustained injuries to his head, which required stitches, and one of his fingers was permanently bent.

[3] In the criminal trial, Powers testified, in part:

Powers, along with petitioner's father-in-law and a neighbor, who was a reserve Pendleton Police Officer, tackled petitioner and held him on the ground until the police arrived. While Powers and the two other individuals attempted to subdue petitioner, he yelled twice that "[s]omebody's going to die."[4] Powers testified that petitioner "was swinging the bat back and forth and, like a lunatic, he just kept yelling." The neighbor testified at trial that

> "we got [petitioner] out and on the ground and he was, at that point, still swinging, you know, trying to maneuver his way out of the apartment or out away from us, trying to do whatever he was intending to do, and got him down on the ground and I removed the baseball bat from his hand and I actually ordered him to do it and I was able to release the baseball bat out of his hand, threw it backwards and got him compliant, to where he wasn't going to hurt or injure anybody at that point."

Immediately after the incident, petitioner told a police officer that he had hit Powers with the bat. He also apologized to his father-in-law, stating, "I'm sorry I had to drag you into this[.]"

In his criminal trial, petitioner testified that he did not remember hitting Powers. According to petitioner, he had been driving around before the incident and wanted to discuss with his wife whether the couple was going to divorce and how they would divide their marital property. Petitioner testified that he was driving his father's car at the time, which happened to have a bat in it, and that he brought the bat to his wife's door for protection because his wife had told

---

"He had [the bat] behind his legs and it only took a couple seconds. The next thing I knew, I was—my head was being bashed in, so to say, that he had struck me, I think it was, like four or five times.

"* * * [T]here were quite a few blows that hit my back as I was—as I was trying to bring him down. He—I believe he got full blows in as he was going down. It all happened so fast."

[4] Petitioner's father-in-law testified at trial:

"When I was attempting to hold his shoulders to the ground, he [petitioner] screamed out, 'Somebody's going to f-ing die for this. Somebody's going to f—ing die.' And I told him to shut up.

"* * * * *

"* * * [Petitioner] said, 'This is what you get for f-ing around with another man's wife.' "

(Alteration in original.)

him that a man with a black belt in karate wanted to beat him up.[5] Petitioner thought that his wife was having an affair with that individual. When petitioner knocked on the door to his wife's apartment, Powers answered the door. Petitioner testified at trial on direct examination about what happened next:

> "[Petitioner's Counsel]: Was there any conversation between you and [Powers] when he opened the door?
>
> "\* \* \* \* \*
>
> "[Petitioner]: Yes. He opened the door and he stepped up and said that she doesn't love me anymore, that she is with him.
>
> "[Petitioner's Counsel]: And that's when all of it started?
>
> "[Petitioner]: And then I just lost control."

Petitioner denied having any memory of screaming that somebody was going to die, but stated "I was so emotionally upset, I could have [said] almost anything."

Petitioner's defense at trial was that he lost control and therefore lacked the intent to cause physical injury to Powers. The import of his defense appears to have been that, if successful, he would have been found guilty of assault in the third degree, ORS 163.165, a Class C felony, instead of assault in the second degree, ORS 163.175, a Class B felony subject to a mandatory minimum sentence under ORS 137.700.[6]

After petitioner was convicted of assault in the second degree and burglary in the second degree, he filed a petition for post-conviction relief that alleged inadequate assistance of trial counsel in several respects. In support of his petition for post-conviction relief, petitioner submitted an affidavit and a letter from Overstreet regarding an alleged disclosure made by Powers to Overstreet before the incident with petitioner that Powers was having a sexual relationship

---

[5] That individual was later identified as Overstreet.

[6] The trial court also instructed the jury on the lesser included offense of assault in the third degree, which requires proof of recklessly causing physical injury.

with petitioner's wife. Petitioner also submitted letters from various individuals indicating their willingness to attest to petitioner's character for peacefulness and truthfulness. The post-conviction court denied relief, and petitioner now appeals.

To prevail on a post-conviction claim of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, petitioner must establish by a preponderance of the evidence that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result. ORS 138.620(2); *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Similarly, to establish a violation of the Sixth and Fourteenth Amendments to the United States Constitution, petitioner must prove that counsel's representation fell below an objective standard of reasonableness in a way that prejudiced the defense. *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984). We are bound by the findings of fact of the post-conviction court if they are supported by the record. *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002). We review the post-conviction court's legal conclusions for errors of law. ORS 138.220; ORS 138.650.

Petitioner makes 11 assignments of error on appeal. We understand his arguments under those assignments to present three main issues: (1) whether trial counsel's assistance was inadequate because of his failure to use a theory of self-defense at trial; (2) whether trial counsel's assistance was inadequate because of his failure to introduce evidence of petitioner's character of peacefulness; and (3) whether trial counsel's assistance was inadequate because his of failure to impeach Power's testimony at trial with an inconsistent statement. We reject petitioner's remaining arguments without discussion.

We address first whether trial counsel provided inadequate assistance of counsel by failing to assert the theory of self-defense at trial. Acting in self-defense involves the use of physical force upon another person to prevent that person from the imminent use of unlawful physical force. ORS

161.209.[7] Petitioner claims that Powers tackled him first and that there was other evidence from which the jury could have inferred that Powers was the initial aggressor in the fray if the defense had been presented. He concludes that an attorney exercising reasonable professional skill would have presented such a defense, apparently in lieu of the defense that was presented.

■     For the purpose of an inadequate assistance of counsel claim, a reviewing court will not second-guess a lawyer's tactical decisions unless those decisions reflect an absence or suspension of professional skill and judgment. *Gorham v. Thompson*, 332 Or 560, 567, 34 P3d 161 (2001). Also, tactical decisions by trial counsel must be based on a reasonable investigation that is legally and factually appropriate to the case. *Id.*

In an affidavit received in evidence at the post-conviction hearing in the present case, petitioner's trial counsel explained why he did not advise petitioner to assert a defense of self-defense:

> "First, the facts of the case did not coincide with self-defense. [Petitioner] went over to his wife's apartment with a baseball bat. When the victim came to the door unarmed, [petitioner] beat him over the head with the baseball bat. [Petitioner] testified that he leaned the bat up against a wall, knocked on the door, and when the victim came to the apartment, he 'just lost control.' He also claimed that he did not remember much of what happened. The other witnesses and the police who interviewed [petitioner] all supported the fact that the victim did not engage in any combat, but that it was [petitioner] who went into a rage. Based upon the facts of the case, [petitioner's] lack of memory, and the opposing witnesses, there was no basis for a self-defense theory."

---

[7] ORS 161.209 provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

In fact, during cross-examination in the underlying trial, petitioner testified:

"[Prosecution]:    And that's your reason for striking him with the bat?

"[Petitioner]:    I just lost control.

"[Prosecution]:    Because you were enraged?

"[Petitioner]:    Because I was very emotionally upset.

"[Prosecution]:    You were angry.

"[Petitioner]:    I'd just had enough. I just couldn't take it anymore. She's out telling me that she loves me and don't want a divorce. What am I supposed to think?"

We conclude based on the record before us that trial counsel's decision not to assert a theory of self-defense was a reasonable tactical decision, particularly in light of the neighbor's testimony that petitioner continued swinging the baseball bat and that petitioner would not let go of it, as well as the efforts that it took to subdue petitioner. Petitioner's trial testimony that he hit Powers because he was emotionally upset also supports trial counsel's decision that the facts did not support the assertion of a viable theory of self-defense. We therefore agree with the post-conviction court's conclusion that petitioner did not carry his burden of persuasion in that regard.

■    We next consider whether the post-conviction court erred in rejecting petitioner's assertion that trial counsel's assistance was inadequate because he failed to offer evidence of petitioner's peaceful character and that, had that evidence been presented, it would have had a tendency to affect the result of the prosecution. Because trial counsel did not render inadequate assistance of counsel by failing to assert the defense of self-defense, we consider the remainder of petitioner's assignments of error in the context of the defense that was asserted—that is, that petitioner acted recklessly rather than with the intent to injure Powers. Some statutory definitions help to frame the issue. ORS 161.085(7) provides that a person acts "intentionally" when the person "acts with a conscious objective to cause the result or engage in the conduct so described." ORS 161.085(9) provides that a person

acts "recklessly" when the person "is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists."

Petitioner argues that the evidence of his peaceful character was admissible under OEC 404(2)(a)[8] and was relevant under OEC 401[9] to demonstrate that it was less likely that he acted with the intent to injure Powers. Assuming without deciding that petitioner's assertions are correct, he must still prove that he suffered prejudice as the result of trial counsel's omission. *Trujillo*, 312 Or at 435. Petitioner testified in his criminal trial that, after he knocked on the door, "[Powers] opened the door, and he stepped up and said that she doesn't love me anymore, that she is with [Powers]." According to petitioner's own testimony at trial, it was that statement that prompted him to "lose control." In light of petitioner's testimony, the testimony of other witnesses as to petitioner's statements that were made at the time of the incident, and the remaining circumstances of the encounter as evidenced in the record before us, it is difficult to perceive how evidence of petitioner's purportedly peaceful character would have made any difference to the jury in deciding whether petitioner acted with the intent to injure Powers or only acted recklessly. Petitioner's repeated efforts to strike Powers with a baseball bat in response to Powers's statement overwhelmingly belie the notion that petitioner acted only recklessly. Accordingly, the post-conviction court did not err in denying petitioner post-conviction relief on the ground that trial counsel was inadequate because he failed to offer evidence of petitioner's peaceful character.

■ We next consider whether the post-conviction court correctly rejected petitioner's argument that trial counsel

---

[8] OEC 404(2) provides:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

[9] OEC 401 provides, in part:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

furnished inadequate assistance of counsel because he failed to impeach Powers's testimony at trial based on an inconsistent statement to show bias as well as lack of credibility. Powers testified at trial that he had not had a sexual relationship with petitioner's wife. Petitioner contends that trial counsel should have impeached Powers under OEC 609-1 by offering testimony from Overstreet that, before the incident, Powers told Overstreet that he was having a sexual relationship with petitioner's wife.[10] However, in his affidavit, trial counsel averred:

> "[Petitioner] claims that I did not impeach the victim [Powers] and [petitioner's] wife with evidence that they had a sexual relationship. My investigator thoroughly investigated and spoke with numerous people regarding this alleged sexual relationship. No witness existed that would have testified they had personal knowledge that the victim and [petitioner's] wife were having [a] sexual relationship."

Petitioner argues that trial counsel never spoke with Overstreet; "his only contact with him was through his investigator." In a second affidavit, trial counsel said "[t]here was nothing useful in the interview of Chuck Overstreet. Nearly everything he said consisted of hearsay and speculation. * * * [I]n my opinion[, Overstreet] was not being truthful and would be of no help at trial." Petitioner challenges that assessment based on the contents of the investigator's report. He concludes:

> "At this point it should have been clear to petitioner's attorney that he should 'follow up' on the [investigator's report] and seek to identify Overstreet's 'basis of knowledge.' * * * If [trial counsel] had re-interviewed Overstreet,

---

[10] OEC 609-1 provides:

"(1) The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the statement shall be shown or disclosed to the opposing party.

"(2) If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts."

he would have discovered Overstreet's 'basis of knowledge' was statements made to him by [Powers]."

■     There is evidence in the record to support the trial court's finding that trial counsel was not inadequate for failing to investigate Overstreet's statements in light of trial counsel's testimony and counsel's assessment that Overstreet was not a truthful witness. It is not unreasonable to fail to follow up on a witness's statements if it is reasonable to believe that the witness would not be credible. Even if counsel should have investigated Overstreet's statements further, and even if he should have presented him as a witness for the purpose of impeaching Powers's testimony, we conclude that the failure to impeach Powers either for bias or with a prior inconsistent statement about whether he was having an affair with petitioner's wife did not prejudice petitioner. Arguably, if the jury had heard Overstreet's testimony, it might have disbelieved Powers's testimony in other particulars, but that would still leave the physical evidence of Powers's injuries and the testimony of the other witnesses who subdued petitioner, evidence that was highly probative of the fact that petitioner acted intentionally rather than recklessly.

    Affirmed.