416 March 6, 2024 No. 161

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

DAVID DANIEL VEGA-ARRIETA,
*Petitioner-Appellant,*

*v.*

Tyler BLEWETT,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
17CV42589; A174808

J. Burdette Pratt, Senior Judge.

Argued and submitted September 15, 2022.

Margaret V. Huntington argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

*Church v. Gladden*

**HELLMAN, J.**

Petitioner appeals a judgment denying his petition for post-conviction relief from several counts of first-degree sex crimes against a minor. On appeal, he raises four assignments of error. The first alleges that the court erred in denying his motion for substitution of counsel under *Church v. Gladden*, 244 Or 308, 417 P2d 993 (1966). The remaining three assignments of error allege that the post-conviction court erred in denying his claims for relief grounded on contentions of inadequate and ineffective trial counsel. We conclude that the court did not err in denying relief on those grounds. Accordingly, we affirm.

We review a post-conviction court's judgment on a petition for post-conviction relief for legal error and accept the court's supported implicit and explicit factual findings. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). At issue in this matter are parallel claims of inadequate and ineffective assistance of trial counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. The standards for assessing the performance of counsel under both constitutions are "functionally equivalent." *Johnson v. Premo*, 361 Or 688, 699, 339 P3d 431 (2017). Under Article I, section 11, a petitioner must prove two elements: first, that trial counsel failed to exercise reasonable professional skill and judgment, and second, that the petitioner suffered prejudice from counsel's inadequacy. *Id.* Prejudice under the state constitution is demonstrated when a petitioner shows that counsel's failure had a "tendency to affect the result of his trial." *Id.* Under the Sixth Amendment, a petitioner must prove that counsel provided constitutionally deficient representation which prejudiced him. *Strickland v. Washington*, 466 US 668, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984). Prejudice under the federal constitution is demonstrated when there is a "reasonable probability that, but for counsel's [deficiency], the result of the proceeding would have been different." *Id.* When a post-conviction court has "determined that petitioner failed to prove both elements of an inadequate assistance claim[,]" we will affirm the post-conviction court's decision unless "the petitioner persuades this court that the post-conviction

court committed reversible error with respect to its rulings as to each element." *Austin v. Premo*, 280 Or App 481, 486, 380 P3d 1253, *rev den*, 360 Or 697 (2016).

The relevant facts are as follows. The criminal proceedings began after R reported to his neighbor, Matsuura, that petitioner had been sexually abusing him. R reported the abuse after Matsuura witnessed R lying face down and humping a hole in the ground between Matsuura and R's trailer park homes. When Matsuura confronted R about this, R stated that he was doing what he learned from petitioner. After she reported the incident to R's mother, the police and CARES NW began an investigation in which R reported that petitioner had sexually abused him. During the investigation, the police conducted a forensic analysis of petitioner's computer and found pornography on it. At the conclusion of the investigation, the state charged petitioner with several counts of first-degree sexual abuse of R.

Petitioner elected to have a bench trial. Counsel's[1] defense for petitioner was two-fold. Counsel first argued that R fabricated the allegations against petitioner because of the compromising situation that Matsuura had caught him in. Counsel also argued that R would have contracted Herpes Simplex Virus-2 (HSV2), if the allegations of sexual abuse were true, because petitioner was diagnosed with that virus. R's medical and forensic examination did not show that R had signs or symptoms of HSV2, but he was not formally tested for it.

R testified at the bench trial. R testified that he was 10 years old when the abuse began and that it occurred about three times per week over seven months. Regarding Matsuura's witnessing of R humping the ground, R stated that he did not remember Matsuura finding him on the ground as she testified, but that he told her about the abuse on a separate occasion. The state also introduced R's CARES video interview and had R's mother testify to corroborate some of his statements. An investigating officer testified about the forensic search of petitioner's computer, including a description of the pornography as involving same-sex encounters.

---

[1] Petitioner was represented by two attorneys at trial.

Petitioner's trial counsel called Matsuura as a witness during the bench trial. Matsuura testified to witnessing R hump the ground with his pants down, and that R was embarrassed and scared. Matsuura testified that R told her that he was being touched or humped by petitioner at home when R's mother was not around. She further testified that R asked her not to tell his mother about the incident because he was afraid that petitioner would beat him and his mother up. Matsuura reported the abuse to R's mother about a month later when R was comfortable talking about it with her.

Counsel then called Dr. Fahey to testify in support of the HSV2 theory. Dr. Fahey testified that, based on literature reviews, repetitive sexual contact would make it more likely that someone would transmit HSV2 to someone else, regardless of age. Dr. Fahey opined that, if petitioner had sexually abused R three times a week over seven months, there was a greater than 50 percent chance that R would also have contracted HSV2. On cross-examination, Dr. Fahey admitted that he was only knowledgeable on the risk of HSV2 transmission between adults and that he was not qualified to provide opinions about the risk of HSV2 transmission from adults to children.

During closing argument, petitioner's counsel argued to the court that R was so embarrassed about being caught with his pants down humping the ground by Matsuura that he fabricated the abuse to deflect attention from his actions. Counsel also attempted to highlight inconsistencies in R's testimony and conflicts between R's and Matsuura's testimonies. Counsel further argued that children could still get HSV2, and that the decision from R's doctors not to test him for it shed reasonable doubt on petitioner's guilt.

The trial court, relying on R's testimony, found petitioner guilty on all counts and sentenced petitioner to 300 months in prison. We affirmed petitioner's convictions on direct appeal, and the Supreme Court denied review. *State v. Vega-Arrieta*, 279 Or App 609, 381 P3d 1049 (2016), *rev den*, 360 Or 762 (2017).

Petitioner then filed for post-conviction relief. In a petition drafted by post-conviction counsel, petitioner claimed that his trial attorneys provided inadequate and ineffective assistance for calling Matsuura as an adverse witness and for failing to properly investigate the HSV2 transmission theory. The petition also made a separate claim of cumulative error. Petitioner's counseled petition for relief did not include several claims that petitioner wanted his attorney to raise.

Because counsel had not included all the claims that petitioner wanted, petitioner filed a *Church* motion, which is a mechanism for post-conviction petitioners to "notify the post-conviction court that counsel has failed to raise certain grounds for relief and to ask the court to either replace counsel or instruct counsel to raise those grounds for relief." *Bogle v. State of Oregon*, 363 Or 455, 471, 423 P3d 715 (2018). In his motion, petitioner requested that the post-conviction court order counsel to: (1) attach an affidavit from a qualified expert on infectious diseases to support the contention that trial counsel were ineffective for relying on Dr. Fahey for the HSV2 theory; (2) raise a claim that the testimony from a police detective about a forensic report of petitioner's computer was inadmissible hearsay; and (3) raise a claim that trial counsel were ineffective for failing to object to the admission of the detective's testimony about the pornography found on petitioner's computer, because it prejudiced him by showing a predisposition to sexual attraction to people of the same sex. In a written response to the motions, post-conviction counsel stated: "After reviewing [p]etitioner's *Church* claims, pursuant to [Rules of Professional Conduct (RPC)] 3.1, I will not file an Amended Petition to include those claims." The post-conviction court then held a hearing on petitioner's motion.

At the hearing, the court gave counsel an opportunity to explain his decision not to raise the claims petitioner wanted him to. Counsel explained in some detail about why petitioner's claims lacked merit. In response to petitioner's request to attach an affidavit from an expert qualified in infectious diseases, counsel stated that he was not able to include such an affidavit because none of the experts he

contacted were willing or able to provide the information petitioner was hoping for. In response to the request to raise the hearsay claim, counsel stated that the testimony was not hearsay because the detective testified about his own observations. Lastly, in response to petitioner's request to raise the claim that trial counsel should have objected to the testimony from the detective about the pornography on petitioner's computer, counsel stated that the trial lawyers "probably should have" objected to it, but that, in post-conviction counsel's view, the failure to object "didn't rise to a constitutional magnitude." Counsel explained that "the [s]tate would have a strong argument that [the pornography] showed a predisposition to petitioner being attracted to males," and that, even if objected to, the testimony "would have been admissible even if the [c]ourt balanced [for prejudice] under [OEC] 403." Counsel further stated that, had petitioner's trial lawyers objected, the "case would have been appealed at the same time as [*State v.*] *Williams*, 357 Or 1, 346 P3d 466 (2015)] [in which] a little girl's panties were admissible to show a predisposition." So, according to post-conviction counsel, petitioner would not have been successful in his challenge to the detective's testimony because petitioner would not have been able to show prejudice.

The court denied petitioner's *Church* motion because it did not find any basis to instruct counsel to raise the claims or to provide petitioner with a new lawyer. The court noted that petitioner, proceeding through an interpreter, agreed that counsel should continue to represent him in the case. The court then denied petitioner relief on all grounds alleged in the counseled petition. This appeal followed.

In his first assignment of error, petitioner contends that the post-conviction court erred when it denied his *Church* motion for substitution of counsel. He argues that counsel became "oppositional" during the *Church* hearing to the claims petitioner wanted to raise. Citing *Lopez v. Nooth*, 287 Or App 731, 403 P3d 484 (2017), petitioner argues that counsel's "oppositional" responses to petitioner's claims required the court to appoint substitute counsel for petitioner.

Petitioner's argument that counsel's oppositional statements during the *Church* hearing warranted substitution

is unpreserved because he did not raise that ground for sub-stitution of counsel to the post-conviction court. "[A]s a gen-eral rule, arguments not made to the post-conviction court in support of a claim will not be considered on appeal." *Pohlman v. Cain*, 312 Or App 676, 680, 493 P3d 1095, *rev den*, 368 Or 787 (2021) (*Church* argument unpreserved because the peti-tioner raised it for the first time on appeal); *see also* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court."). Indeed, we have declined to address similar argu-ments from post-conviction petitioners who argued that the post-conviction court erred in handling their *Church* motion or that their post-conviction counsel became oppositional to them because the petitioners raised those claims for the first time on appeal and did not raise the issue to the post-conviction court. *Pohlman*, 312 Or App at 680-81; *Newmann v. Highberger*, 330 Or App 229, 233, ___ P3d ___ (2024); *Bacon v. Cain*, 327 Or App 673, 679, 536 P3d 634 (2023); *Chrisco v. Blewett*, 313 Or App 622, 623, 491 P3d 832 (2021), *rev den*, 369 Or 211 (2022).

Here, petitioner made his *Church* motion to deter-mine whether counsel's decision not to raise the additional claims for post-conviction relief constituted "a failure to exercise reasonable professional skill and judgment" such that it warranted a court instruction to counsel to raise them or provide petitioner with a new attorney. *Bogle*, 363 Or at 476. The motion necessarily did not reference counsel's statements about the merits of the claims that petitioner wanted him to raise because those only arose during the hearing on petitioner's motion.

In *Lopez*, we set forth guidance for post-conviction counsel on how to professionally and ethically respond to a court's inquiries about why certain claims cannot be included in a post-conviction petition. 287 Or App 731. We stated that counsel may "indicate to the post-conviction court that counsel has reviewed the [claims petitioner seeks to raise], and pursuant to the [RPC] 3.1, has declined to amend the petition [for relief] to include them." *Id.* at 736 (footnote omitted). And we reversed when counsel went beyond that to provide details and reasons as to the merits

of each claim in a way that placed counsel "in an adversarial role, assuming the role of opposing counsel." *Id.*

If counsel's response oversteps in a way that impermissibly reveals confidences or becomes oppositional to the petitioner, that provides a new and separate reason to substitute counsel. *Id.* As such, that becomes a new claim that a petitioner must raise to the post-conviction court. Thus, to have preserved a claim for replacement of counsel based on counsel's oppositional statements as opposed to his claim based on counsel's refusal to raise certain claims, petitioner needed to have objected to counsel's response on the record. Such an objection could have occurred in court after counsel made the alleged oppositional statements or in writing any time before the court ruled on the post-conviction petition.[2] *See, e.g.*, *Lopez*, 287 Or App at 733 (the petitioner preserved claim that his counsel's response became oppositional to the claims petitioner wanted counsel to raise because the petitioner moved to have counsel substituted after the *Church* hearing and before the post-conviction court ruled on the petition for relief). Any objection would need to be sufficient to alert the post-conviction court that petitioner took issue with counsel's statements, explain why those statements amounted to counsel becoming oppositional, and that the statements warrant substitution of counsel. By taking those steps, a petitioner presents the post-conviction court with the opportunity to develop a record on the issue, decide the merits of the claim, and take corrective action if necessary.

We note that there is a tension between our opinion in *Lopez* and the Supreme Court's later decision in *Bogle*. *Lopez* suggests that the most counsel should say in response

---

[2] We recognize the reality that, for a variety of reasons, a post-conviction petitioner may not personally be in a position to make an immediate, fully-formed objection to an attorney's oppositional statements. A petitioner has no reason to anticipate that counsel will become oppositional and thus no reason to prepare for such an event. Further, once counsel becomes oppositional, barring intervention from the court, a petitioner is effectively left on their own to raise the issue. Many petitioners would be hard-pressed to know precisely what to say if the hearing takes such an unexpected turn. This may be even more true for petitioners, like petitioner in this case, who are proceeding through an interpreter or who otherwise encounter different barriers in the court system. We thus reaffirm that a subsequent *Church* motion made in writing after the hearing and before the post-conviction court issues its decision would also preserve the issue for appellate review, as occurred in *Lopez*.

to a *Church* motion is that counsel has reviewed the claims and declines to raise them under RPC 3.1. Our opinion in *Lopez* rested, in part, on our then-understanding of the law that if the petitioner brought a *Church* motion, and the post-conviction court did not either instruct counsel to raise the claim or provide substitute counsel, the petitioner would not be barred from raising the claim in a successive post-conviction petition. 287 Or App at 735-36. Because of our determination of the role that *Church* motions played in the post-conviction litigation framework, we focused on the relative merits of the claim itself and did not venture too far into questions about counsel's representation or strategic choice of claims to litigate.

However, in *Bogle*, the Supreme Court determined that an unsuccessful *Church* motion would not allow a petitioner to bring a subsequent post-conviction petition on the claims set forth in that motion. 363 Or at 458. Instead, the Supreme Court determined that a *Church* motion was solely for the "petitioner to seek to have counsel raise the [disputed] grounds for relief in the current post-conviction case." *Id.* Under that framework, the post-conviction court's evaluation of a *Church* motion involves a question of whether petitioner's complaint about counsel is "legitimate"; that is, whether "counsel's failure to raise the ground for relief constitutes a failure to exercise reasonable professional skill and judgment." *Id.* The Supreme Court also reiterated the longstanding rule that counsel can "decline to assert a ground for relief even if it is supported by fact and law in order for focus on more promising grounds for relief." *Id.* at 473.

Although a *Church* motion does not raise a question of constitutional adequacy or effectiveness of counsel, *Bogle* requires the petitioner to demonstrate a "legitimate complaint" about counsel, which requires the post-conviction court to intervene in the attorney-client relationship. And although the question was whether counsel was "suitable" under the state statutes for appointed post-conviction counsel, *Bogle* equated the analysis to one of substitution of counsel in criminal cases. 363 Or at 471-72. The inquiry about a legitimate complaint or suitable counsel is, in effect, then a question of whether counsel has breached their duty to the

client. In those circumstances, the attorney-client privilege can give way to the extent necessary for counsel to respond to the accusations. *Longo v. Premo*, 355 Or 525, 539, 355 P3d 1152 (2014) (interpreting OEC 503(4)(c)).

*Bogle's* framing of the question, and its subsequent answer, suggests that counsel may, and sometimes must, disclose more than we permitted in *Lopez* in response to a petitioner's *Church* motion. 363 Or at 472-73. Consequently, *Bogle* suggests that the portion of our opinion in *Lopez* prohibiting the disclosure of confidences may no longer be correct. Indeed, we have remanded to the post-conviction court with instructions to conduct a "*Bogle* hearing," when the record indicated that one did not occur, indicating that we also understood *Bogle* to require a more fully developed record than we approved of in *Lopez*. *E.g.*, *Lobo v. Cain*, 310 Or App 314, 484 P3d 1104, *rev den* 368 Or 513 (2021). If that is the case, a petitioner who makes a *Church* motion may unknowingly place themselves in a position to permit disclosures of confidences.

However, other text in *Bogle* indicates that the Supreme Court may not have expected the post-conviction court to conduct a trial-like hearing on the suitability of post-conviction counsel's representation in the context of a *Church* motion. As mentioned above, *Bogle* refers to the standards for determining substitution of counsel at trial, which does not involve a contemporaneous in-depth examination of counsel's representation. *See* 363 Or at 472 (citing *State v. Davidson*, 252 Or 617, 619-20, 451 P2d 481 (1969) and *State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992)). Moreover, the impracticality of holding such a hearing in the middle of an existing post-conviction hearing suggests that is not what the Supreme Court had in mind in *Bogle*.

Although the Supreme Court did not provide explicit guidance for counsel in responding to *Church* motions, the opinion can fairly be read to suggest that counsel can best respond to a *Church* motion by explaining that, after investigation and research, counsel made a strategic decision to assert the grounds raised in the petition, instead of other grounds that the petitioner wanted counsel to raise. Based on existing law, it would also seem that the amount

of detail that counsel provides in that explanation would vary depending on the circumstances and could still cross the line into oppositional under *Lopez* if it became advocacy against the client, 287 Or App at 736, or resulted in disclosure of confidences that were unnecessary to address the issues raised by the client, *Longo*, 355 Or at 539.

We need not draw any bright lines or conclusively resolve the tension between *Lopez* and *Bogle* in this case because at no point during or after the *Church* hearing did petitioner alert the post-conviction court that he believed counsel became oppositional to him. Absent that kind of objection, the only issues before the post-conviction court were the arguments contained within petitioner's *Church* motion. Therefore, as in *Bacon*, *Newmann*, *Chrisco*, and *Pohlman*, the post-conviction court did not have the opportunity to rule on the claim that petitioner presents to us. Petitioner thus did not preserve his claim that the post-conviction court erred in denying his *Church* motion on the ground that counsel became oppositional to him.

We now turn to petitioner's remaining three assignments of error. In his second assignment of error, petitioner contends that the post-conviction court erred when it denied petitioner's claim that trial counsel was ineffective for calling an adverse witness, Matsuura, without a better understanding of what her testimony would be. The post-conviction court made a factual finding, which is supported by evidence in the record, that Matsuura's testimony was essential to petitioner's defense theory that R fabricated the allegations against petitioner to deflect attention from the embarrassing circumstance in which Matsuura caught R. Although Matsuura's testimony may not have been exactly what counsel hoped for, calling a necessary witness does not demonstrate an "absence or suspension of professional skill and judgment." *Gorham v. Thompson*, 332 Or 560, 567, 34 P3d 161 (2001); *Johnson*, 361 Or at 699. Further, given that Matsuura's testimony allowed counsel to argue a defense to the charges, petitioner has not demonstrated how the decision to call her was prejudicial. Therefore, the post-conviction court did not err when it determined that petitioner did not prove inadequate or ineffective representation

under either the state or federal constitution based on their decision to call Matsuura as a witness.

In his third assignment of error, petitioner argues that the post-conviction court erred when it denied petitioner's claim that trial counsel was ineffective for failing to investigate the defense theory regarding HSV2 transmission and calling Dr. Fahey to testify to a science in which he does not have expertise. Even if it was not an exercise of reasonable professional skill and judgment to call an expert who could not support the defense theory, petitioner has not demonstrated prejudice. In the end, Dr. Fahey's testimony did not support the defense theory, but neither did it undermine it. The trial court specifically stated that it was relying on the victim's testimony to reach its verdict, and petitioner has not demonstrated how Dr. Fahey's testimony affected the way in which the trial court would have judged the victim's credibility. Thus, petitioner has not demonstrated that any alleged deficiencies in his trial counsel's performance had a "tendency to affect the result of his trial," *Johnson*, 361 Or at 699 (prejudice standard for Oregon constitution), or a "reasonable probability that, but for counsel's [alleged deficiency], the result of the proceeding would have been different." *Strickland*, 466 US at 694 (prejudice standard for federal constitution). Accordingly, the post-conviction court did not err in denying this claim for relief.

In his fourth assignment of error, petitioner contends that the post-conviction court erred in denying his claim alleging cumulative error. The post-conviction court properly rejected that claim because Oregon courts have not recognized a cumulative error theory of relief. *Monica v. Myers*, 319 Or App 376, 386-87, 510 P3d 238, *rev den*, 370 Or 212 (2022) (citing *Farmer v. Premo*, 283 Or App 731, 754 n 13, 390 P3d 1054 (2017), *rev'd on other grounds*, 363 Or 679, 427 P3d 170 (2018)). Even if our courts recognized cumulative error as a ground for relief, we would reject petitioner's arguments because, as noted above, petitioner did not demonstrate that he suffered prejudice from his trial counsel's alleged deficient performance, and there would be no prejudice to accumulate.

Affirmed.