156 August 27, 2025 No. 782

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ZHIVAGO CAYA RHODES,
*Petitioner-Appellant,*

*v.*

Amber SUNDQUIST,
Superintendent,
Deer Ridge Correctional Institution,
*Defendant-Respondent.*

Jefferson County Circuit Court
22CV22013; A182393

Jenefer Stenzel Grant, Senior Judge.

Submitted July 22, 2025.

Jason Weber and Equal Justice Law filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Petitioner appeals from the denial of his petition for post-conviction relief. In that petition, petitioner argued that his trial counsel was inadequate for eliciting a diagnosis of sexual abuse from a doctor who had examined the victim. Because we conclude that the post-conviction court correctly determined that petitioner failed to prove that he was prejudiced by his counsel's actions, we affirm.

A petitioner claiming inadequate assistance of counsel has "to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991); *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984). To demonstrate prejudice, a petitioner must show that counsel's alleged deficiency had a tendency to affect the outcome of the case. *Davis v. Kelly*, 303 Or App 253, 262, 461 P3d 1043, *rev den*, 366 Or 826 (2020).

Here, petitioner has failed to meet that burden. Petitioner was convicted of sexually abusing his girlfriend's granddaughter. Both the victim and her brother, who was witness to some of the abuse, testified at trial. Additionally, the victim's father, a responding police officer, the victim's grandmother, and a detective testified about the victim's disclosures of petitioner's abuse. The state also played recordings of the victim's disclosures to the detective and to the police officer.

Dr. Chervenak, who examined the victim at a child-abuse intervention center, also testified. She explained that the victim's physical examination was "normal," an outcome that is common among young girls who report sexual abuse. Chervenak also testified about the victim's disclosures, which mirrored her disclosures to her grandmother, police officers, and her father.  On cross examination, defense counsel asked Chervenak whether she had diagnosed the victim with sexual abuse and then asked her about the medical explanation for that diagnosis. Defense counsel questioned Chervenak about the extent to which the diagnosis is

based on what the victim reported as opposed to any physical manifestations of abuse.

During a subsequent discussion between the prosecutor, defense counsel, and the court, defense counsel—in response to the court's concerns about counsel having elicited a diagnosis of sexual abuse—explained that he had a strategic reason for eliciting that testimony. He stated that because the case was based largely on the victim's statements, and not physical evidence, his questions to Chervenak were intended to show that she was just "another person *** to be just an investigator taking information because they're just statements" as opposed to any physical manifestations of abuse.

After his conviction, petitioner filed for post-conviction relief. He asserted that his trial counsel failed to exercise reasonable skill and judgment in eliciting the diagnosis of sexual abuse and that he suffered prejudice as a result. As relevant here, the post-conviction court concluded that petitioner did not prove that he suffered prejudice. We agree. To be sure, offering a diagnosis of child sexual abuse is, in many cases, prejudicial; indeed, that risk of prejudice is why the diagnosis is so often inadmissible evidence.

But here, defense counsel elicited the diagnosis, in essence, to eviscerate its foundations—to show that the diagnosis was based only on the victim's statements and not any physical evidence. Stated slightly differently, the diagnosis and how Chervenak reached it were intended to allow counsel to bolster the defense's case. *See Vega-Arrieta v. Blewett*, 331 Or App 416, 427-28, 545 P3d 746, *rev den*, 372 Or 763 (2024) (concluding that the petitioner failed to prove prejudice from his trial counsel's decision to call a particular witness where the witness's testimony allowed counsel to argue a defense to the charges).

And in light of the entire record of the case, eliciting the diagnosis did not have a tendency to affect the outcome of the case. Ultimately, the diagnosis was based on the same, or same type of statements that the other witnesses' testimony recounted. The doctor mentioned the diagnosis only briefly. The state did not rely on the diagnosis at any

point during its case or during closing arguments. Moreover, the state offered significant other evidence of the abuse, as described above. It is unlikely that jurors were influenced by the diagnosis in any way that could have tended to change the outcome. We thus agree with the post-conviction court that petitioner failed to meet his burden to show that he was prejudiced by trial counsel's actions, *i.e.*, the evidence does not show that counsel's actions "had a tendency to affect the result." *Gorham v. Thompson*, 332 Or 560, 564, 34 P3d 161 (2001); *cf. Farmer v. Premo*, 363 Or 679, 701-02, 427 P3d 170 (2018) (concluding that there was more than a mere possibility that the verdict had been affected by counsel's failure to present expert testimony that a gun found at another suspect's home was "likely" the murder weapon; that testimony "could have been significant," where, among other things, there was evidence that the other suspect resembled the shooter, the petitioner's admissions to the murder differed from forensic evidence, and there was evidence that cast doubt on the reliability and credibility of witnesses identifying the petitioner and placing him in the area before the shooting).

Affirmed.